845 So.2d 142 (2003)
Omar WILSON, Petitioner,
v.
STATE of Florida, Respondent.
State of Florida, Petitioner,
v.
Dexter Byrd, Respondent.
Nos. SC01-2083, SC01-2333.
Supreme Court of Florida.
April 10, 2003.
*144 Carey Haughwout, Public Defender, and Allen J. DeWeese, Assistant Public Defender, *145 Fifteenth Judicial Circuit, West Palm Beach, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, and Michael J. Neimand, Division Chief, and Barbara A. Zappi, Assistant Attorney General, Fort Lauderdale, FL; and Belle B. Schumann, Assistant Attorney General, Daytona Beach, FL, for Respondent.
Charles J. Crist, Jr., Attorney General, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, FL, for Petitioner.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Respondent.
PARIENTE, J.
We have for review Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), and Wilson v. State, 792 So.2d 601 (Fla. 4th DCA 2001), which expressly and directly conflict on the issue of whether a presumption of judicial vindictiveness should arise whenever the trial judge participates in an unsuccessful plea discussion and the defendant subsequently receives a harsher sentence from the same judge after a trial or hearing.[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS

(1) Byrd v. State

Before the jury was brought into the courtroom for trial, the following exchange took place on the record:
COURT: Anything else before we bring in the jury?
DEFENSE COUNSEL: As I indicated to the court, Mr. Byrd asked me what the court's inclination would be for a plea to the bench, and your honor indicated 30 years.
COURT: From what I understand from the State, and I haven't seen the score sheet, but apparently he's not pure driven snow and his score sheet comes out to more than 15 years.

So I think 30 years is a fair offer, considering what you would do is over 100 years, and this isn't your first robbery. Frankly, I thinkGood God, he's got numerous armed robberies.
DEFENSE COUNSEL: They all arise out of one plea.
COURT: Well, there you go. They all count, though. I think 30 years is a steal. He certainly won't get that low if he goes to trial. His record is horrendous.
(Emphasis supplied.) Byrd rejected the offer and proceeded to trial, after which he was sentenced to seventy-five years in prison.
On appeal, Byrd argued that "when the defendant rejects the court's offer and is subsequently convicted, if the court exceeds its former offer, a presumption of vindictiveness arises and such presumption was not overcome in this case." Byrd, 794 So.2d at 672. A majority of the Fifth District's three-judge panel agreed, reasoning as follows:
In McDonald v. State, 751 So.2d 56, 59 (Fla. 2d DCA 1999), the court held that "when the judge has been involved in the plea negotiations and then later imposes a harsher sentence, the sentence is presumed to be vindictive." That is a reasonable method of dispelling a defendant's legitimate fear of retribution should he exercise his constitutional right to a jury trial. The supreme court may well have had such a presumption *146 in mind when it required that "[a] record must be made of all plea discussions involving the court." See [State v.] Warner, 762 So.2d [507, 514 (Fla.2000) ]. During the discussion leading up to the offer the court should state the facts relied on by it in making the offer. Those facts can then be compared with any "additional facts emerging prior to sentencing" to see if the harsher sentence is justified. In any event, if the trial court elects to sentence more harshly based on additional facts which may emerge prior to sentencing, should the judge not at least put on record what the additional facts are and how those facts changed the judge's view? If the judge can change his or her mind merely by saying that after hearing the testimony he or she is convinced that a harsher sentence is justified, then there is no protection against vindictiveness in rejection of plea cases.
Whether we call it an unrebutted presumption or merely hold that the court has failed to explain on the record what information it had at sentencing that it did not have at the time of the plea offer and how such information would have made a difference, the result is the same. The State suggests that the court was concerned about the timing of the offense in connection with the defendant's release from prison and was also concerned about the number of offenses. But this information was before the court at the time of its offer. It is less a reason than an excuse.
Id. at 672-73 (footnote omitted). The Fifth District then considered several remedies, including setting the sentence itself, remanding to the trial judge to make findings supportive of the more severe sentence, or remanding for resentencing before a different judge. See id. at 673. Ultimately, the Fifth District concluded that the proper remedy was to "reverse and remand to the trial court to sentence the defendant in accordance with its prior plea offer." Id.
Judge Griffin concurred specially, agreeing with the result but rejecting the "`presumption of vindictiveness' analysis." Byrd, 794 So.2d at 673 (Griffin, J., concurring specially). Judge Griffin concluded that the resentencing was required because the trial judge's actions appeared to violate one of the restrictions imposed by this Court in Warner, that "a judge must neither state for imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial." Id. (quoting Warner, 762 So.2d at 514).

(2) Wilson v. State
In Wilson, the State alleged that Wilson violated his community control. See 792 So.2d at 601. At his final hearing, Wilson indicated that he wished to enter an open plea and admission to the violation. See id. at 601. The following exchange then occurred:
THE COURT: Has anyone promised you anything other than the fact [the] court would revoke your probation, adjudicate you guilty if you haven't been previously adjudicated guilty, sentences you to 128 months Florida state prison with credit for time served. Do you understand that?
[DEFENSE COUNSEL]: Your Honor, before you pronounce sentence, I would like the court to hear from Mr. Wilson and hear from his fiancé.
THE COURT: What is the purpose of that since this is the bottom of the guidelines and I can't go any lower than the bottom?
[DEFENSE COUNSEL]: Well, your Honor, what we would be asking, for you to reinstate Mr. Wilson.

*147 THE COURT: I thought there was an agreement.
[DEFENSE COUNSEL]: It's an open plea, your Honor.
THE COURT: No.
[DEFENSE COUNSEL]: He still wants to admit to the violation.
THE COURT: No. Go to a final hearing. Set it down for a final hearing. Let's proceed.
[DEFENSE COUNSEL]: Could I have a moment, your Honor?
THE COURT: That's all right. Court withdraws the offer.

* * *
[DEFENSE COUNSEL]: Good morning again. Emilio Benitez on behalf of Mr. Wilson on page 3 [of the court's docket].
THE COURT: Are you ready to proceed to final hearing?
[DEFENSE COUNSEL]: Yes, your honor.
Before that, I'd like to address Mr. Wilson.
Mr. Wilson, that's what you want to do? You want to go to a final hearing; is that correct?
[WILSON]: Yes, sir.
[DEFENSE COUNSEL]: You don't want to accept the court's offer of 128 months; is that correct?

[WILSON]: No.
THE COURT: And my advice to you was the court's offer was the bottom of the guidelines and in my opinion you should have taken it. Is that
[WILSON]: Excuse me?
THE COURT: Okay. Let's proceed. Let's swear in the defendant.
Id. (alterations in the original) (emphasis supplied).
At the end of the hearing, the trial judge found that Wilson wilfully violated his community control and sentenced him to a mid-range guideline sentence of 150 months in prison. See id. On direct appeal, the Fourth District held that the case should be remanded for resentencing as a result of our decision in Heggs v. State, 759 So.2d 620 (Fla.2000),[2] but rejected Wilson's argument that his "original sentence was vindictive and, therefore, he should, on remand, be resentenced by a different trial judge." Wilson, 792 So.2d at 603.
The Fourth District acknowledged that "[a] defendant may not be subjected to a more severe punishment for exercising his constitutional right to stand trial." Id. However, the Fourth District also referred to its earlier decision in Mitchell v. State, 521 So.2d 185 (Fla. 4th DCA 1988), where it had previously explained:
Absent a demonstration by the defendant of judicial vindictiveness or punitive action, a defendant may not complain simply because he received a heavier sentence after trial. A disparity between the sentence received and the earlier offer will not alone support a finding of vindictiveness.... Having rejected the offer of a lesser sentence, [the defendant] assumes the risk of receiving a harsher sentence. Were it otherwise, plea bargaining would be futile.
Wilson, 792 So.2d at 603 (quoting Mitchell, 521 So.2d at 190) (alterations in the original). Based on Mitchell and the facts in Wilson's case, the Fourth District concluded that a presumption of vindictiveness did not arise:

*148 Here, the plea offer was given and was voluntarily rejected. The trial judge made no remarks which would give any indication that the harsher sentence was being imposed as a punitive measure for rejecting the previous offer. Although the judge reiterated the plea offer at the start of the hearing, he did not refer to it again at sentencing, or even at the resentencing.
Wilson, 792 So.2d at 603.

PRESUMPTION OF VINDICTIVENESS
The legal principle referred to as a presumption of judicial vindictiveness has constitutional roots and developed through a line of United States Supreme Court decisions beginning with North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In Pearce and its companion case, Simpson v. Rice, the Supreme Court considered "what constitutional limitations there may be upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received." Id. at 719, 89 S.Ct. 2072. The defendant in Pearce was convicted after trial and sentenced to a term of imprisonment, while the defendant in Rice pled guilty to several charges. See id. at 713-14, 89 S.Ct. 2072. Both defendants' judgments were later reversed and both defendants were then retried, convicted, and sentenced to longer terms than previously imposed. See id.
The Supreme Court first held that "neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction." Id. at 723, 89 S.Ct. 2072. However, the Supreme Court concluded that it would be a "flagrant violation" of the Due Process Clause of the Fourteenth Amendment "for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." Id. at 723-24, 89 S.Ct. 2072. Noting that the "existence of a retaliatory motivation would ... be extremely difficult to prove in any individual case," id. at 725 n. 20, 89 S.Ct. 2072, the Court held:
[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
Id. at 726, 89 S.Ct. 2072 (emphasis supplied).
As explained by the Supreme Court in subsequent decisions, Pearce and its progeny established "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." United States v. Goodwin, 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). However, the presumption does not apply unless there is a "realistic likelihood of `vindictiveness,' "or, in other words, "the opportunities for vindictiveness ... [must] impel the conclusion that due process of law requires a rule analogous to that of the Pearce case." Blackledge v. Perry, 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). Accordingly, not every increase in sentence justifies the imposition of the prophylactic rule announced in Pearce. See Blackledge, 417 U.S. at 26, 94 S.Ct. 2098.
*149 In Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Supreme Court considered a challenge to Kentucky's two-tier system for adjudicating misdemeanor offenses, which provided that these lesser crimes could be tried by an "inferior court" with the accused entitled to a de novo trial in a court of general jurisdiction if convicted after trial or a guilty plea. See 407 U.S. at 112-13, 92 S.Ct. 1953. The defendant argued that this system violated the Due Process Clause as interpreted by Pearce, because the trial judge conducting the de novo trial was not bound by the sentence imposed by the inferior court. See Colten, 407 U.S. at 114, 92 S.Ct. 1953. In rejecting the defendant's argument, the Supreme Court concluded:
Our view of the Kentucky two-tier system of administering criminal justice... does not lead us to believe ... that the hazard of being penalized for seeking a new trial, which underlay the holding of Pearce, also inheres in the de novo trial arrangement. Nor are we convinced that defendants convicted in Kentucky's inferior courts would be deterred from seeking a second trial out of fear of judicial vindictiveness. The possibility of vindictiveness, found to exist in Pearce, is not inherent in the Kentucky two-tier system.

Id. at 116, 92 S.Ct. 1953 (emphasis supplied). The Supreme Court also indicated its concern that
the restraints called for in ... Pearce... might, to the detriment of both defendant and State, diminish the likelihood that inferior courts would impose lenient sentences whose effect would be to limit the discretion of a superior court judge or jury if the defendant is retried and found guilty.
Id. at 119, 92 S.Ct. 1953.
In Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), upon which the State relies in this case, the Supreme Court again considered the situation where a harsher sentence was imposed after a trial and the initial sentence was the product of a guilty plea. With Smith, the Supreme Court overruled its prior decision in Rice and qualified the Pearce decision, stating:
While the Pearce opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." As we explained in Texas v. McCullough, [475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) ] "the evil the [Pearce] Court sought to prevent" was not the imposition of "enlarged sentences after a new trial" but "vindictiveness of a sentencing judge." Because the Pearce presumption "may operate in the absence of any proof of an improper motive and thus... block a legitimate response to criminal conduct," we have limited its application, like that of "other `judicially created means of effectuating the rights secured by the [Constitution],'"to circumstances "where its `objectives are thought most efficaciously served.'" Such circumstances are those in which there is a "reasonable likelihood," that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness.
Smith, 490 U.S. at 799, 109 S.Ct. 2201 (citation omitted) (alterations in the original).
The Supreme Court in Smith reasoned that "[e]ven when the same judge imposes both sentences, the relevant sentencing information *150 available to the judge after the plea will usually be considerably less than that available after a trial." Id. at 801, 109 S.Ct. 2201. Therefore, a greater sentence imposed after trial than imposed after a guilty plea "is not more likely than not attributable to" judicial vindictiveness, but rather due to the greater relevant sentencing information available to the judge after a trial. Id. The Supreme Court also noted "some important developments in the constitutional law of guilty pleas" since the Rice decision, including that "[a] guilty plea may justify leniency," that a prosecutor may offer to recommend a more lenient sentence or reduction in charges during the plea negotiation process, and that a prosecutor may threaten a defendant with increased charges if he or she does not enter a plea. Smith, 490 U.S. at 802-803, 109 S.Ct. 2201.
We conclude that Smith is not dispositive of the issue before us because that case involved a plea offer made by the prosecutor with no judicial participation in the plea discussions. Smith was not a case like Byrd or Wilson in which the trial judges participated in unsuccessful plea discussions.[3] Further, although the Supreme Court broadly held that no presumption of vindictiveness applies in cases where the first sentence was imposed as the result of a guilty plea, the facts of Smith as recited by the Supreme Court indicate that the trial judge had stated the reasons for the increased sentence on the record. See 490 U.S. at 796-97, 109 S.Ct. 2201.
We also recognize that the constitutional right at issue in this case is not the defendant's right to appeal his conviction or sentence but, rather, the defendant's constitutional right to a jury trial. However, just as a trial judge cannot punish a defendant for exercising his or her appellate rights, see Pearce, 395 U.S. at 723-24, 89 S.Ct. 2072, "[t]he law is clear that any judicially imposed penalty which needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)." City of Daytona Beach v. Del Percio, 476 So.2d 197, 205 (Fla.1985) (quoting Gillman v. State, 373 So.2d 935, 938 (Fla. 2d DCA 1979)). Therefore, although a guilty plea may justify leniency, see Smith, 490 U.S. at 802, 109 S.Ct. 2201, an "accused may not be subjected to more severe punishment for exercising ... [the] constitutional right to stand trial." Mitchell v. State, 521 So.2d 185, 187 (Fla. 4th DCA 1988).
Thus, the question we must confront is whether due process principles compel us to adopt a presumption of vindictiveness that arises whenever the trial judge participates in the plea negotiations and the defendant subsequently receives a harsher sentence after a trial or hearing. Byrd and Wilson assert that this presumption logically follows from our opinion in State v. Warner, 762 So.2d 507 (Fla.2000). We disagree.

JUDICIAL PARTICIPATION IN PLEA NEGOTIATIONS
In Warner, we considered whether it was permissible for the trial judge to participate in plea negotiations and, if so, what restrictions apply. The specific question before the Court was whether a sentence was "per se invalid where the trial court, over the State's objection, advise[d] a defendant regarding what sentence would be *151 imposed pursuant to a plea of guilty, and accept[ed] the defendant's subsequent guilty plea." Warner, 762 So.2d at 509.
After noting that several states, the federal system, and the American Bar Association's Standards for Criminal Justice Relating to Guilty Pleas have expressly prohibited judicial participation in plea negotiations, and considering the pros[4] and cons[5] of allowing judicial participation in plea negotiations, we ultimately decided to permit limited judicial participation with certain safeguards adopted by the Michigan Supreme Court in People v. Cobbs, 443 Mich. 276, 505 N.W.2d 208 (1993). See Warner, 762 So.2d at 513. Therefore, although we did not prohibit judicial participation in plea negotiations, we imposed several limitations on that participation, which we concluded were necessary "to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice." Id. (emphasis supplied).
The first restriction we placed on judicial participation is that the trial judge could not initiate the plea dialogue. See Warner, 762 So.2d at 513. However, the judge "may ... participate in such discussions upon request of a party" and "[o]nce involved, the court may actively discuss potential sentences and comment on proposed plea agreements." Id. at 513-14. The question from the defendant's perspective for the court's consideration is: "Knowing what you know today, what do you think the sentence would be if the defendant pled guilty, as charged?" Id. at 514 (emphasis supplied).
Second, we made clear that the judge must "neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial." Id. (emphasis supplied). Further, although the preliminary evaluation made by the judge is not binding, the defendant who pleads guilty or nolo contendere in reliance on that evaluation has the absolute right to withdraw the plea if the judge later determines that a greater sentence must be imposed. See id. Finally, we required that a record be made of all plea negotiations involving the trial judge. See id.
We also briefly addressed the situation where a plea was either not entered or was withdrawn. Recognizing that "[a] judge's candid statement of how a case appears at an early stage of the proceeding does not prevent the judge from deciding the case in a fair and evenhanded manner later, when additional facts become known," we concluded that "the judge who participated in the plea bargaining process will not automatically be subject to recusal." Id. (emphasis supplied).
It was with these restrictions and caveats that we sought to "accommodate[] the competing interests involved" and allow for the benefits of judicial participation while protecting the integrity of the judicial system and the rights of defendants. Id. at 512-13. We emphasized that although *152 the delineated safeguards "apply in those cases where a trial court agrees to be an active participant in plea bargaining discussions, the court may decline to assume such a role." Id. at 514.
Our decision in Warner was not the first time this Court addressed the issue of judicial participation in plea negotiations. More than twenty years before Warner, this Court decided Davis v. State, 308 So.2d 27 (Fla.1975), in which we declined to condemn judicial participation in plea bargaining "per se" due to our confidence "that the trial judges of this state [would] take all necessary precautions to assure that defendants' rights are protected by appropriate safeguards." Davis, 308 So.2d at 29.
The Warner decision was a refinement of Davis, in which we delineated certain minimum procedural safeguards, applicable prospectively to such participation. See Warner, 762 So.2d at 510. Therefore, Warner did not, as Byrd and Wilson contend, implement a new policy in this State with respect to judicial participation in plea negotiations. Instead, Warner involved a very narrow holding that permits a trial judge to respond to a request from a defendant as to what sentence the judge would impose in exchange for a guilty plea. Warner was never intended to create a constitutional right to the sentence offered by the judge or to give the defendant an expectancy that the sentence would be no higher if the defendant decided not to plead guilty. Accordingly, we do not agree with Byrd and Wilson that our opinion in Warner mandates that a presumption of vindictiveness arise in all cases where a higher sentence is imposed after the judge has participated in the plea discussions. We conclude that "[t]he possibility of vindictiveness, found to exist in Pearce," is not "inherent" in the process set forth in Warner. See Colten, 407 U.S. at 116, 92 S.Ct. 1953.
Further, we recognize that it is to the defendant's advantage, in a case where there are no plea negotiations with the State, to ascertain from the judge what the sentence would be if the defendant pleaded guilty. Thus, we are mindful that imposing a presumption of vindictiveness in cases where the Warner procedures have been followed, "might, to the detriment of... [the] defendant ... diminish the likelihood" that the trial judge would participate in plea discussions at a defendant's request. Colten, 407 U.S. at 119, 92 S.Ct. 1953.
Nevertheless, imposition of a harsher sentence, without explanation on the record after judicial participation in the plea negotiations, does raise concerns that were not present in the United State Supreme Court opinion in Smith. As previously noted, in Smith there was no judicial participation in the plea negotiations and the trial judge stated reasons on the record for the harsher sentence. See 490 U.S. at 796-98, 109 S.Ct. 2201. Therefore, we now face the question of the appropriate analysis to utilize in determining when a presumption of vindictiveness arises. In answering this question, it is instructive to review the relevant decisions of the district courts of appeal issued both before and after Warner.

TOTALITY OF CIRCUMSTANCES
Consistent with the United States Supreme Court cases that address the presumption of vindictiveness, the district courts of appeal were considering a totality of the circumstances analysis in determining whether the presumption arose, even before our decision in Warner. In Mitchell v. State, 521 So.2d 185 (Fla. 4th DCA 1988), defense counsel asked the judge about the possibility of a plea after the *153 first witness testified at trial. See 521 So.2d at 186. The trial judge asked about the defendant's record and questioned the defendant about his parole status, and the State offered to forego filing for habitual offender status and seeking a departure from the guidelines if the defendant pled. See id. The defendant rejected the trial judge's offer of seven to nine years and elected to proceed with the trial. See id. The trial judge then made the following comments on the record:
[T]he offer made was based upon entry of a plea at this time and based upon the state's indication that they would not be seekingif he entered a plea now that they would not be seeking any aggravation and not be seeking a habitual offender status. Obviously, the court's position would becould very well be entirely different at the conclusion of the trial should appropriate motions be filed.
Id.
After the defendant was convicted, the trial judge imposed an upward departure sentence of twelve years, with written reasons supporting the departure. See id. The defendant appealed, arguing that the harsher sentence should be presumed vindictive. The Fourth District rejected the defendant's argument, concluding that nothing in the record supported a presumption of vindictiveness. See id. at 190. The Fourth District further found that a disparity between the sentence imposed and the earlier offer did not alone support a finding of vindictiveness, and that there were no comments on the record that on their face would support a presumption of vindictiveness. See id.
In contrast to Mitchell, the facts presented in Stephney v. State, 564 So.2d 1246 (Fla. 3d DCA 1990), led the Third District to apply the presumption of vindictiveness and vacate the defendant's sentence in that case. Stephney involved a plea offer of 364 days plus placement in a drug rehabilitation program made by the judge at the defendant's arraignment. See 564 So.2d at 1247. The defendant rejected the plea, a jury was sworn for the trial, and the trial judge then offered the defendant three and one-half years in exchange for a guilty plea. See id. The defendant responded by asking the judge to renew its offer of 364 days. See id. The Third District's opinion recites the following exchange that then occurred between the trial judge and defense counsel:
THE COURT: I guess he should have taken it [the original plea offer]. No. It's not available now.
MR. KUPER [defense counsel]: Well, at this time he would be willing to ask Your Honor if you would consider some type of community control with a drug program outside
THE COURT: No.
MR. KUPER:due to the fact that he may have a drug problem.
THE COURT: No. He had the same drug problem the day of arraignment.
MR. KUPER: In lieu of the fact that he would have been out by now, anyway
THE COURT: Even more so. The next time he will know to take it when I offer it at arraignment.

. . . .
THE COURT: ... I only wish that the guys that sit next to the ones at arraignment, that give them all the legal advice, would be here at times like this.
Id. (emphasis supplied).
The State then presented the rest of its case, after which the trial judge again offered the defendant three and one-half years. See id. The defendant again asked for a shorter sentence in light of his drug addiction. The trial judge responded:
*154 "Absolutely not. I offered him three and a half. I will, as a gesture of goodwill, leave it open right now before you have to decide if your client is testifying, for about fifteen seconds." Id. The trial judge withdrew the offer, the jury returned a guilty verdict, and the judge imposed a nine-year sentence, the highest permissible sentence under the guidelines. See id. at 1248. After reviewing the record and the transcript, the Third District concluded that there was no reason why the harshest possible sentence was rendered. See id. The Third District further found that the comments on the record "on their face support[ed] a presumption of judicial vindictiveness which was in no way dissipated by record evidence." Id.
The Second District has also confronted the issue of when a presumption of vindictiveness arises. See, e.g., McDonald v. State, 751 So.2d 56 (Fla. 2d DCA 1999). In McDonald, the defendant rejected the State's plea offer of 42 months' imprisonment prior to the trial. See id. at 58. The following exchange appeared in the record:
THE DEFENDANT: No, sir, I don't want it. I didn't do it.
THE COURT: You know that the police officers are going to come in here and testify that you did it?
THE DEFENDANT: Yes, sir.
THE COURT: They're going to testify they took the money from you with the serial numbers; do you understand that?
THE DEFENDANT: They didn't get the money.
THE COURT: Well, all right. Do you understand ma'am, that if you're convicted, if the jury finds you guilty, that you are potentially, you are facing 30 years in Florida State Prison; do you understand that?
THE DEFENDANT: Yes, sir.
Id.
During the State's case, testimony revealed that the police officers never recovered the money. See id. During a recess in the proceedings, McDonald agreed to plead guilty to all counts charged in exchange for a forty-eight month sentence. See id. When the terms of the agreement were presented, the judge rejected the agreement without explanation. See id. After the jury returned a guilty verdict, the trial judge imposed concurrent maximum sentences, totaling thirty years in prison. See id.
The Second District reviewed the record and concluded that it "simply [did] not undermine the presumption that the extreme disparity between" the plea offer and sentence imposed was, "at least in part, the product of judicial vindictiveness." Id. at 59. In reaching this conclusion, the Second District noted that "the pretrial colloquy plainly reflect[ed] the judge's attempt to convince McDonald to accept the State's" plea offer. The Second District also noted that even though the trial judge had "learned some other things about McDonald which in his discretion reasonably might have caused him to temper her punishment," he nevertheless imposed maximum sentences. Id.
Although McDonald involved a plea offer from the State, McDonald shows that similar concerns regarding judicial vindictiveness may arise where the trial judge does not make the offer itself but, rather, becomes actively involved in an unsuccessful plea bargaining discussion between the State and the defendant. In fact, the Second District expressly rejected the State's argument that there was no judicial participation because the State made the plea offer:
Here, the State contends that the trial judge did not participate in the plea *155 negotiation, pointing out that the 42-month offer was made by the prosecutor. But given the purpose of the rule to ensure that defendants are not intimidated by fear of judicial reprisal when weighing whether to waive their constitutional rightsthe source of the plea offer was not as important as the fact that the judge advocated it.

Id. (emphasis supplied).
Since Warner, the Third District has continued to apply a totality of the circumstances analysis in reviewing claims of judicial vindictiveness. For example, in Charles v. State, 816 So.2d 731 (Fla. 3d DCA 2002), the Third District examined all the circumstances surrounding a rejected plea and the sentence imposed after trial, and concluded that the sentence was presumptively vindictive. The factors considered by the Third District included: (1) that the judge initiated the plea discussions; (2) that the sentence imposed was four times more severe than the original offer; (3) that at the time of the offer the judge heard all of the evidence presented by both sides, inquired as to the defendant's criminal history, asked whether anyone had been injured during the offense, and asked whether the defendant had carried a firearm; and (4) that the record in the case was devoid of any factors that may have come out during sentencing that warranted the significant increase. See id. at 735. Further, the Third District indicated that the comments made by the trial judge, which included statements such as that the defendant made the "biggest mistake of his life" by rejecting the offered sentence, contributed to a finding that the presumption was appropriately applied in this case. See id. at 733-734.
On the same day Charles was decided, the Third District also decided Prado v. State, 816 So.2d 1155 (Fla. 3d DCA 2002). As did McDonald, Prado involved a plea offer from the State and again demonstrates that similar concerns regarding judicial vindictiveness may arise regardless of whether the initial plea offer comes from the State or the trial judge. In Prado, prior to the start of a second trial, the trial judge "initiated a lengthy exchange with Prado regarding the benefits of accepting the state's four-year prison plea offer, in lieu of proceeding to trial." 816 So.2d at 1156. Prado rejected the State's offer, was found guilty by the jury and was sentenced to forty years in prison. See id. The Third District reviewed the transcript, noted that the sentence imposed was a tenfold increase from the plea offer, and concluded that the trial judge's comments on their face supported a presumption of vindictiveness. See id. at 1157.[6]
*156 The above cases illustrate the tension between the realistic expectation recognized in Smith that "a guilty plea may justify leniency," 490 U.S. at 802, 109 S.Ct. 2201, and the constitutional imperative that a defendant should not be penalized by the judicial system for not accepting a plea and exercising his or her constitutional right to proceed to trial. See Del Percio, 476 So.2d at 205. In order to balance these competing constitutional principles, we decline to adopt a rigid rule, as urged by Byrd and Wilson. We conclude that a totality of the circumstances review, as the Third District applied in Charles and Prado, is the more appropriate analysis to employ to determine whether a defendant's constitutional right to due process of law was violated by the imposition of an increased sentence after unsuccessful plea discussions in which the trial judge participated.
Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a "reasonable likelihood" that the harsher sentence was imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial. See Smith, 490 U.S. at 799, 109 S.Ct. 2201. The other factors that should be considered include but are not limited to: (1) whether the trial judge initiated the plea discussions with the defendant in violation of Warner; (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial;[7] (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.[8]
As regards factors (1) and (2), if the judge participates in the plea negotiations beyond what is contemplated by Warner, or by his or her comments appears to have departed from the role of a neutral arbiter, then these actions alone may give rise to a presumption of judicial vindictiveness that would shift the burden to the State to produce affirmative evidence on the record to dispel the presumption. We recognize that when the judge indicates a likely sentence in response to a request by the defendant and later imposes a harsher sentence after a trial or hearing, there is always potential for the appearance of vindictiveness. Simply put, the same flexibility that prosecutors have to actively engage in plea negotiations does not extend to judges. That is why the requirements of Warner must always be strictly followed.
Furthermore, as a general rule it is not the judge's role to advocate for a plea offer.[9] When the trial judge becomes *157 an advocate for a pleaeither one offered by the judge or by the Statethe trial judge runs the risk of departing from its critical role as a neutral arbiter. The trial judge must make clear that the sentence is based on what the judge presently has before him or her, and must caution that there is no guarantee that this same sentence will be imposed if the defendant elects to go to trial. Further, if the defendant elects not to accept the offer and the judge later imposes a harsher sentence, the trial judge should consider placing the reasons for the greater sentence on the record. As Judge Sorondo explained in Prado:
[T]he fact that a trial judge expresses an inclination to accept a state plea offer, does not mean that he or she will be bound to impose the same sentence after hearing the trial, if the evidence raises concerns that were not perceptible from the usually abbreviated representations made to the court during the plea bargaining process. Factors such as the nature of the defendant's prior convictions, the degree of violence employed by the defendant during the commission of the crime, the sophistication with which the charged offense was committed, and/or the physical or psychological suffering endured by the victim(s), are some factors that might lead the court to increase what it originally considered to be an acceptable sentence. Nevertheless, a judge who, having been advised of the details of the case and having been actively involved in an unsuccessful plea bargaining discussion, wishes to impose a post-trial sentence more severe than that contemplated by his or her plea negotiations, would be wise to explain his or her reasons for the greater sentence in order to dispel any appearance of vindictive sentencing.
816 So.2d at 1164 (Sorondo, J., concurring) (footnote omitted). These additional precautions will serve to dispel any "apprehension of ... a retaliatory motivation on the part of the sentencing judge," Pearce, 395 U.S. at 725, 89 S.Ct. 2072, thereby protecting the integrity of the judicial system and the rights of the defendants. See Warner, 762 So.2d at 512-13.

APPLICATION OF THE TOTALITY OF THE CIRCUMSTANCES ANALYSIS TO BYRD AND WILSON

Because Byrd involves a trial judge who participated in the plea discussions, the first factor to consider is whether the judge complied with the requirements of Warner. The record in this case indicates that the trial judge did not initiate the plea discussions, but simply responded to a question from Byrd about a possible plea. However, we conclude, as did the Fifth District, that the trial judge exceeded the limits of Warner by both urging Byrd to accept the plea offer of thirty years and stating that if Byrd chose to go to trial he "certainly" would not get that low. See Byrd, 794 So.2d at 672. These comments implied that the sentence imposed would hinge on future procedural choices, specifically Byrd's exercise of his right to trial.
*158 Further, there is an extremely large disparity between the offered thirty-year sentence and the seventy-five year sentence imposed. See id. Finally, the Fifth District's opinion indicates that the trial judge had "shown no reason why its pre-trial evaluation of the appropriate sentence... was in error." Id. at 673. These factors, taken together under a totality of the circumstances analysis, give rise to a presumption of judicial vindictiveness that the State failed to rebut.
Turning to Wilson, this case involves a violation of probation where the trial judge offered to sentence Wilson to 128 months if he pled guilty. When Wilson indicated that he wanted to put on testimony from his fiancée before the judge imposed sentence, the trial judge withdrew the "offer." Subsequently, the trial judge commented before the start of the revocation hearing, that "the court's offer was the bottom of the guidelines and in my opinion you should have taken it." Wilson, 792 So.2d at 602. This comment indicates that the judge may have unintentionally stepped outside the bounds of Warner and departed from the role as a neutral arbiter. This comment also implies that the judge had already decided that Wilson was not going to receive the bottom of the guideline sentence previously offered no matter what occurred during the hearing, and that Wilson would be penalized for exercising his right to a hearing on his violation of probation charge. This implication is heightened by the fact that immediately after the hearing, which was held shortly after the plea discussions, the judge imposed a 150-month sentence without explanation. Moreover, the record lacks any facts that explain the increased sentence.
In Wilson's case, it is not simply the increased sentence that gives rise to an unrebutted presumption of vindictiveness. Rather, it is the judge's comment that Wilson should have accepted the offer, coupled with the increased sentence imposed shortly thereafter, and the absence of any explanation for the increase that give rise to the unrebutted presumption of vindictiveness.

REMEDY
The Fifth District held that the appropriate remedy in Byrd was to enforce the rejected plea offer. The Fifth District considered several options including resentencing Byrd to an appropriate sentence itself, remanding to the trial judge to make findings supportive of the more severe sentence, or remanding for resentencing before a different judge, but found each of these options lacking in some respect. Byrd, 794 So.2d at 673. We agree that neither setting Byrd's sentence itself nor remanding to the trial judge to make findings on the record was appropriate once Byrd's sentence was found to be presumptively vindictive. However, we disagree that Byrd should be resentenced in accordance with the prior plea offer. Once Byrd rejected the plea offer, he had no constitutional right to the offered sentence.
We are aware that the Fifth District was concerned that remanding for resentencing before a different judge "would ignore the problem created by the initial [plea] offer" because the resentencing "judge would not know what prompted the original offer and thus would not know what new facts may have been discovered after the plea offer which might justify a harsher sentence." Byrd, 794 So.2d at 673. However, the reason for the original plea offer and any "new facts" that may have come to light are relevant only when considering the defendant's claim that the sentence imposed was vindictive and should be vacated. The information has *159 no bearing on a resentencing proceeding because the resentencing places the defendant in the same position he or she would have been in if the plea discussions had never occurredbefore a neutral arbiter to receive a lawful sentence. Further, this remedy is consistent with our decision in Warner, in which we anticipated that failed plea discussions may, under some circumstances, require the recusal of the trial judge who participated in the discussions. See 762 So.2d at 514 (stating that when a plea is not entered "the judge who participated in the plea bargaining process will not automatically be subject to recusal"). Accordingly, in cases where an unrebutted presumption of judicial vindictiveness arises, we conclude that the appropriate remedy is resentencing before a different judge.[10]

CONCLUSION
For the reasons discussed above, we approve in part and quash in part the Fifth District's decision in Byrd. We approve the Fifth District's decision to the extent that it holds that an unrebutted presumption of vindictiveness arose in that case. However, we quash the Fifth District's decision to the extent that it holds that Warner requires a presumption of vindictiveness in all cases where the trial judge participates in an unsuccessful plea discussion and the defendant subsequently receives a harsher sentence from the same judge after a trial or hearing, and to the extent it holds that the proper remedy is to remand for sentencing in accordance with the rejected plea offer. Rather, we conclude that resentencing before a different judge is the appropriate remedy when a presumption of vindictiveness is unrebutted.
In Wilson, we conclude that a presumption of vindictiveness arose that was unrebutted. Accordingly, we quash the Fourth District's decision in Wilson to the extent that it holds that no unrebutted presumption of vindictiveness arose. As in Byrd, the appropriate remedy is a resentencing before a different judge.
We remand these cases to the district courts of appeal for further proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., QUINCE, J., and SHAW, Senior Justice, concur.
QUINCE, J., concurs specially with an opinion.
WELLS, J., concurs in part and dissents in part with an opinion, in which LEWIS, J., and HARDING, Senior Justice, concur.
LEWIS, J., concurs in result in part and dissents in part with an opinion.
QUINCE, J., concurring specially.
I concur in the conclusions reached by the majority because the presumption of vindictiveness is the natural result when judges are allowed to initiate or participate in plea bargaining with the defendants. I concurred in the result only in our decision in State v. Warner, 762 So.2d 507 (Fla. 2000), because it is my firm belief that trial judges should not participate in the plea bargaining process. The prosecutor is charged with the responsibility of determining whom to prosecute and what charges should be brought against particular defendants. See Wayte v. United States, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); State v. Bloom, 497 So.2d 2 (Fla.1986). The determination of *160 the charges will in turn determine the defendant's sentencing exposure.
Plea bargaining often involves a give and take between the defendant and the prosecuting authority concerning the issue of the final charges that the defendant will be held to answer for. Thus, it is the prosecutor who should be bargaining with the defendant. Once a bargain has been reached, the trial judge must then determine whether, under the facts of a given case, the agreed upon bargain should be accepted.
These cases are prime examples of what happens when the trial judge, the neutral arbiter, enters into the plea bargaining process.
WELLS, J., concurring in part and dissenting in part.
I concur in Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), only as to the resentencing. I find that, under the specific facts of this case, the defendant should be resentenced because the trial judge's statements do appear to be in conflict with this Court's decision in State v. Warner, 762 So.2d 507, 514 (Fla.2000). As recognized by Judge Griffin in her concurring opinion in the district court, "In fairness to the trial court, Warner had not been issued at the time of the taking of Mr. Byrd's plea." I would remand to the trial judge for a resentencing with an explanation of the harsher sentence if the trial judge continues to find that sentence appropriate. I see no reason to substitute another trial judge.
I dissent from the majority's adoption of a presumption of vindictiveness. Clearly, there is no constitutional requirement for such a presumption. I believe that the majority's decision will severely undermine the reasoning of the Warner decision and will result in trial judges wisely not making any pre-plea statements. This will be to the detriment of defendants.
I dissent from disapproving Wilson v. State, 792 So.2d 601 (Fla. 4th DCA 2001).
LEWIS, J., and HARDING, Senior Justice, concur.
LEWIS, J., concurring in result in part and dissenting in part.
I concur in the result the majority presents with regard to Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), only as to resentencing. I respectfully dissent with all other aspects. In my view, the majority opinion becomes involved unnecessarily with presumptions and the single concurring opinion misconstrues this Court's holding in State v. Warner, 762 So.2d 507 (Fla.2000). In Warner, we held:
[J]udicial involvement [in the plea bargaining process] must be limited to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice. The trial court must not initiate a plea dialogue; rather, at its discretion, it may (but is not required to) participate in such discussions upon request of a party.
Id. at 513 (citations and internal quotation marks omitted). Under Warner, while judges may have limited participation in the plea bargaining process, they may not be a party to the actual plea the defendant must weigh. Judges are to act as information centers only. The limited Warner holding was intended to allow a judicial officer to provide information to a defendant and answers to his or her questions. Clearly, the judge may not initiate the bargaining process or make statements that could in any way be construed as *161 actual negotiation. The judge must, at all times, remain a neutral arbiter of justice.
The majority relies upon a presumption of vindictiveness test, applicable when a judge becomes involved in plea negotiations and the defendant is subsequently sentenced to a more extensive term of imprisonment than he would have received under the terms of the original plea agreement. See majority op. at 156. I assert that such a test is unnecessary because following the rule pronounced in Warner, a judicial officer may not actually be involved in plea negotiations. Any involvement beyond answering a defendant's questions and providing information is a clear violation of Warner. The concurring opinion adopts the presumption theory and proceeds to state, "[T]he presumption of vindictiveness is the natural result when judges are allowed to initiate or participate in plea bargaining with the defendants." Concurring op. at 160. However, under Warner, unquestionably, judges may not initiate or participate in plea bargaining with a defendant. Judges must only play a limited informational role in any negotiation process that unfolds.
NOTES
[1] For purposes of oral argument, on our own motion, we consolidated these two cases. On our own motion, we now consolidate these cases for disposition in this opinion.
[2] In Heggs, we held unconstitutional a statute that included a new version of the sentencing guidelines, thus requiring resentencing of certain defendants who were sentenced under the unconstitutional version. See 759 So.2d at 628.
[3] For this reason the Fourth District's reliance only on Smith in Morales v. State, 819 So.2d 831 (Fla. 4th DCA 2002), for rejecting a presumption of vindictiveness is misplaced.
[4] The Court identified several advantages to allowing judicial participation in plea bargaining negotiations, including directness, simplicity, decorum, and procedural uniformity. See Warner, 762 So.2d at 512.
[5] The concerns noted by the Court included those that "are inherent in the plea bargaining model itself, but may be magnified when the powerful `neutral' in the system becomes embroiled in the negotiation process" (i.e., the defendant's perception of coercion) and those that "appear to be unique to judicial involvement beyond that contemplated by rule 3.171, Florida Rules of Criminal Procedure" (i.e., perception that the trial judge will not be able to fairly rule on the voluntariness of the plea). Warner, 762 So.2d at 511.
[6] Judge Sorondo's concurring opinion contains a lengthy recitation from the pertinent parts of the trial transcript. See Prado, 816 So.2d at 1159-62 (Sorondo, J. concurring). At one point during the discussion of the State's plea offer, Prado stated that he did not believe the trial judge could sentence him to forty years if he was found guilty. See id. at 1160. The judge replied: "Don't be so sure." Id. A few moments later the trial judge stated: "If you feel you're a gambler and a player and want to take a chance, knock yourself out. We'll give you a trial. And once the dice are thrown." Id. After trial, during the sentencing proceeding, the trial judge reiterated that Prado made a mistake by choosing to proceed to trial:

Going to trial is something that we do here but the consequences, of course, are if you lose, you might lose big. In this particular case the defendant made an enlightened choice that was not a particularly good one. He turned down the fairly reasonable plea....
And, he made another life choice when he said to me you will not give me 40 years in state prison. He was wrong about going to trial; he was wrong about that sentence because that's exactly what he's going to get.
Id. at 1162.
[7] Although Warner dealt only with a case where the trial judge, over the State's objection, advised the defendant regarding the sentence that would be imposed pursuant to a plea of guilty, the principles and concerns of Warner expressed in these first two factors have broader application any time the trial judge participates in plea discussions.
[8] Where the totality of the circumstances does not give rise to a presumption of vindictiveness, the burden remains upon the defendant to prove actual vindictiveness. See Smith, 490 U.S. at 799, 109 S.Ct. 2201.
[9] However, as Judge Sorondo correctly observed, Warner does not

forbid[] a judge from becoming involved in a discussion wherein the accused is asked whether he is aware of the state's pending plea offer and his or her maximum exposure if convicted at trial ... A recurring post-conviction claim is that trial counsel was ineffective in that he or she failed to communicate a plea offer made by the state or failed to advise the defendant of his full exposure if convicted at trial. In order to address this potential problem, many trial judges have adopted the practice of asking the attorneys immediately before trial, in the defendant's presence, whether a plea offer has been extended and whether the same has been communicated to the defendant.
Prado, 816 So.2d at 1158 n. 2 (Sorondo, J., concurring).
[10] The trial judge presiding over the resentencing should comply with Florida Rule of Criminal Procedure 3.700(c)(1) by becoming "acquainted with what transpired at the trial, or the facts, including any plea discussions, concerning the plea and the offense."