843 So.2d 1012 (2003)
Frederick Allen GRAFF, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3667.
District Court of Appeal of Florida, Fifth District.
May 2, 2003.
James F. Cummins, Inverness, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
Frederick Allen Graff appeals from the judgment and sentence arising out of his conviction of eight counts of possession of a variety of controlled substances. He raises two issues for the consideration of this court. The first, which involves the trial court's denial of his motions to suppress and of his motion for judgment of acquittal, is without merit and will not be discussed. The second involves whether the sentence meted out by the trial court was vindictive. Although we conclude that it was not, the issue merits discussion.
Graff was tried by jury on eight counts of possession of a variety of controlled substances, including cocaine, LSD, MDMA, ketamine and cannabis, and eight counts of sale and delivery of controlled substances. He was convicted of all of the possession charges (seven third-degree felonies and one misdemeanor), and acquitted of all of the sale and delivery charges. On the following day Graff was scheduled to go to trial on 17 additional drug related charges. Before the trial commenced the State explained to the trial court that the parties had been discussing negotiated pleas to the remaining charges, but had not reached agreement. Each proposal would reduce the pending charges to unlawful possession of controlled substances in exchange for a guilty plea, and would require a prison sentence encompassing the convictions already obtained, and the yet untried charges. The first State proposal was for Graff to serve a total of eight years in prison on all charges with credit for time served. The second offer from the State was to enter an open plea to the *1013 court, but with a minimum prison sentence of 31 months, and a maximum sentence of 20 years. Graff rejected both offers and made a counterproposal of incarceration for 50 months, which was rejected by the State.
After determining that the punishment range for the convictions already obtained ranged from non-state sanctions to 36 years of incarceration, the trial judge observed as follows:
THE COURT: Okay. And, you know, he has his constitutional rights to go to trial. But again, once he's cast his oil out on the water, there's no bringing it back. So you have a guaranteewell, say a guarantee for an eight-year offer today; 20what is it, a capopen plea with 20 cap?
PROSECUTOR: Yes, sir.
THE COURT: Or just continue to forge ahead, which is his right. He's obviously been vigorously defended, and last night he got a not guilty on a hand to hand.
* * *
And it's zero to 36 years right now?
DEFENSE ATTORNEY: Basically non-state sanctions as a minimum.
PROSECUTOR: Statutory maximum would be 36 yearsseven third degree felonies and a misdemeanor, first-degree misdemeanor.
THE COURT: That certainly gives a lot of room for discussions between the parties but I'm not going toagain, I can only say that if you wait sometimes until the very end, it can just have very negative impacts ...
The trial court listened to further discussion of these matters by the parties, but made no firm commitment regarding its willingness to agree to the proposed sentences. The trial judge did, however, offer a third option, which was to enter an open plea to the court, with no cap and no minimum sentence, have a presentence investigation prepared, and "let the chips fall where they may." Graff inquired about a possible maximum sentence, to which the court replied:
Please understand, the court cannot prejudge or indicate what the sentence is going to be. Given the posture of this case, that would not be appropriate. But if you are looking for guarantees, I can just say that you have to seek the counsel of your attorney.
After a great deal of yet more discussion Graff's counsel announced that the parties still had not come to a conclusion, but that his client was considering an open plea to the court. The following colloquy then occurred:
THE COURT: Well, I have no problems with accepting the plea. It would be a no-contest plea to all the counts if the state is going to reduce them to straight possession, ordering a PSI. I want to make sure this is abundantly clear for the record and especially to your client: Are you contemplating an open plea to a PSI and letting me make the final call or are you contemplating an open plea to a PSI with the state's cap of 20 years?
DEFENSE ATTORNEY: If my client was going to plea open, it would be open to the Court, it wouldn't be relying on the state's cap. Not that that wouldI don't know what his ultimate decision is going to be. But I would state that the 20-year cap wouldn't give my client sufficient warm feelings to rely on it.
THE COURT: So you would rather plead open to the Court?
DEFENSE ATTORNEY: If it was going to be an open plea, yes.
THE COURT: If it's an open plea, I'd order PSI, set sentencing off.
*1014 Further discussions proved to be fruitless. Graff was tried and acquitted on all of the additional cases.
At the sentencing hearing a law enforcement officer testified with respect to Graff's prior conviction of possession of 4,000 doses of LSD, having an estimated street value of $20,000. He detailed that Graff was charged only with possession, rather than trafficking, in exchange for agreeing to act as a confidential informant in other cases. According to the officer, as a confidential informant, Graff was able to buy substantial quantities of marijuana, including one purchase amounting to about 50 pounds. Apparently all of the charges that were before the court for sentencing occurred after Graff ceased providing substantial assistance to law enforcement. Finally, the law enforcement officer testified without contemporaneous objection that Graff was the "largest known dealer of ecstasy that has existed in Citrus County," and that he supplied "a variety of narcotics to feed the addictions of citizens in Citrus County."
The State recommended a state prison sentence of no less than 20 years. The defense suggested a "fair but minimum" sentence, particularly in view of the acquittals on all but eight of the 33 charges that Graff faced, and pointed out that the sentencing score sheet reflected a sentencing range of any non-state prison sanction to 36 years incarceration.
The trial court at the conclusion of the hearing characterized Graff as a "dangerous person," and a "menace." He commented on the variety of drugs possessed by Graff and said that he was "like the candy man" because "you've got a little bit of everything." The court concluded by saying that "society is going to be a lot safer by putting you away for a long time," and promptly sentenced Graff to seven consecutive five-year prison sentences for the felonies, and a consecutive 11 months, 29 days sentence for the misdemeanor, a total of 36 years. Graff asserts that the sentence was vindictive and in retribution for the exercise of his right to have his other cases tried by jury.
In State v. Warner, 762 So.2d 507 (Fla. 2000), the supreme court held that a trial court can legitimately make a pre-trial evaluation of an appropriate sentence for a crime for which a defendant faces trial, and based on the information then available to the judge and the pre-trial evaluation, suggest a plea bargain. Warner cautions, however, that judges must not state or imply that the sentence would vary depending on whether or not the defendant chose to exercise his constitutional right to a jury trial. The high court explained that:
To avoid the potential for coercion, a judge must neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial.
Warner, 762 So.2d 507, 514 (Fla.2000).[1]
Warner was recently refined further by the supreme court in Wilson v. State, 845 So.2d 142 (Fla. Apr. 10, 2003), where the high court held:

*1015 Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a "reasonable likelihood" that the harsher sentence was imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial. (Citation omitted). The other factors that should be considered include but are not limited to: (1) whether the trial judge initiated the plea discussions with the defendant in violation of Warner; (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.
After reviewing the record, and comparing the comments of the judge, counsel and the defendant with the requirements of Warner and Wilson, we have determined that an affirmance of the judgment and sentence is appropriate. Obviously, our sensitivity in this case is heightened because the sentence imposed was the maximum, when the parties were negotiating a less severe sanction. We have concluded, however, that after considering the "totality of the circumstances" encompassed within this case, there is no "reasonable likelihood" that the lengthy sentence was imposed in retaliation for Graff's exercise of his right to have his case considered by a jury.
Here, the trial judge did not initiate the plea negotiations with Graff, and in the final analysis never agreed to be bound by either the eight year proposal or the 31-months-to-20-years open plea. He appears to have committed to no more than an open plea, with sentencing to occur after a pre-sentence investigation was prepared. More importantly, the trial judge did not tie a lighter sentence to a plea bargain, and did not depart from his role as impartial arbiter. Instead, he encouraged Graff to discuss plea bargains with his counsel, in light of the fact that Graff had already been convicted of eight crimes and faced numerous additional charges.
Furthermore, at the sentencing hearing the court considered the information contained in the presentence investigation, and received unobjected to testimony from a knowledgeable law enforcement officer concerning Graff's earlier conviction for possession of 4,000 doses of LSD, and his capacity to purchase large quantities of controlled substances with relative ease. The court's overtly stated conclusion that Graff was a dangerous person for the community was not unreasonable, nor without foundation, and as a result, we are unable to say that the imposition of a long but legal sentence was erroneous.[2] The judge at no time committed to a sentence less than the maximum, and the sentence actually imposed was within the bounds of the sentencing guidelines.
AFFIRMED.
GRIFFIN and PLEUS, JJ., concur.
NOTES
[1] This court also addressed the issue of vindictive sentencing in Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), rev. granted, 817 So.2d 850 (Fla.2002), where we reiterated the message from the Warner court that if the trial court elects to sentence more harshly than the initially offered sentence, it should at a minimum state on the record the additional facts which emerged during sentencing that changed the court's viewpoint on sentencing, and how those matters factored into the court's decision. Byrd was one of the cases reviewed by the supreme court in Wilson v. State, 845 So.2d 142 (Fla. Apr. 10, 2003).
[2] The issue of proportionality has not been raised in this appeal. See Williams v. State, 630 So.2d 534 (Fla.1993); Hale v. State, 630 So.2d 521 (Fla.1993).