STONE, J.
The sole issue on appeal is whether Hallmon’s sentence of life in prison is a vindictive sentence, where the same judge, pre-trial, offered him a sentence of nine years in prison. We affirm.
In a previous appeal, Hallmon v. State, 805 So.2d 60 (Fla. 4th DCA 2002), we affirmed Hallmon’s conviction of robbery with a firearm but remanded for re-sentencing because the state failed to adequately prove that he qualified for a habitual offender sentence. In that appeal, although raised, we declined to address the vindictive sentence issue.
The record reflects that a co-defendant, Danielle Marchione, the assistant manager of a Burger King, allowed Hallmon to enter the store after hours. At the same time, a gunman appeared, who forced Mar-chione, Hallmon, and two other Burger King employees back inside the store, and directed Marchione to empty the safe and the cash register. Hallmon told the victims that he would go for help. Meanwhile, the gunman placed Marchione and the other employees in the freezer.
At Hallmon’s first trial, the only witness was Danielle Marchione. That trial, which was conducted before a different judge, ended in a hung jury in February 1998. Thereafter, the state arrested and charged Victor Small, the gunman in the robbery. Small testified, at Hallmon’s second, trial, that Hallmon planned the robbery, gave him the gun, and rode with him to Burger King from Hallmon’s residence.
The supreme court recently addressed the subject of sentencing following trial court involvement in plea negotiations in Wilson v. State, 845 So.2d 142 (Fla.2003). There, the court reaffirmed that appellate courts should look at the totality of the circumstances when determining whether a defendant’s constitutional right to due process was violated by the imposition of an increased sentence after unsuccessful plea negotiations that include the trial court’s participation. Id. at 156.
In Wilson, the supreme court reaffirmed its previous opinion in State v. Warner, 762 So.2d 507 (Fla.2000), declining to adopt a “rigid” rule in balancing competing issues in order to resolve whether an imposed sentence, where the court was previously actively involved in plea negotiations, is vindictive. 845 So.2d at 150-51.
The Wilson court refined Warner, holding that:
Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a “reasonable likelihood” that the harsher sentence was imposed in retaliation for the *664 defendant not pleading guilty and instead exercising his or her right to proceed to trial. See [Alabama v.] Smith, 490 U.S. [794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)]. The other factors that should be considered include but are not limited to: (1) whether the trial judge initiated the plea discussions with the defendant in violation of Warner; (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.
Id. at 156 (footnote omitted).
Here, before Hallmon’s second trial commenced, and after the state amended the information to omit the kidnaping charges, the following colloquy occurred:
MR. COHN [DEFENSE COUNSEL]:
... there is a matter I’d like to bring to the Court’s attention.
THE COURT: Yes
MR. COHN: With the Information now being what it is, the guidelines have changed.
THE COURT: They’ve gone down.
MR. COHN: Pretty dramatically down.
THE COURT: What does he score?
MR. COHN: He scores 82.5, 137.5 months.
THE COURT: 82.5,137.5 months.
MR. COHN: And we’ve had numerous discussions with the State. I know the State’s not going to be making any offer within the guidelines.
THE COURT: They want a departure?
MR. COHN: Yeah. Well, actually, they’re trying to habitualize him as a violent offender.
[[Image here]]
MR. COHN: And we, on behalf of our client, wanted to find out from the Court if the Court would consider a — And I don’t really know what the Court’s procedure is in terms of getting involved in the negotiation. But if the Court would consider a sentence within those guidelines.
THE COURT: Well, you know, even if the State does seek me to qualify Mr. Hallmon — And I’m going to be honest with you. The case law is real clear. The 775.084 governs habitualization, violent offenders.
[[Image here]]
So, having said that [concerning the violent habitual offender mandatory sentence], you know, I’m always agreeable to a fair and adequate sentence, especially before trial, because I may hear some things in trial that may aggravate me and cause me to depart above the guidelines. And I’ve done it. And you all know I love to write. So I put stuff in writing.
I don’t know enough about Mr. Hall-mon. I just know that this is a first-degree felony punishable by life. So let me tell you what the minimum is.
MR. GARCIA [DEFENSE COUNSEL]: Judge, I don’t thing [sic] they’re looking to find him a violent career criminal. I think it’s a habitual violent offender.
MS. JOANNOU [PROSECUTOR]: I believe it’s a habitual violent offender, Judge.
*665 MR. GARCIA: And judge, that says the Court may impose an extended sentence.
THE COURT: Habitual violent-
MR. GARCIA: Yes. The Court may impose. The violent career criminal, the Court must impose a minimum mandatory.
THE COURT: Okay. Let’s get it right. And he’s not a recent prison releasee — ■
MR. GARCIA: So, if the Court does find that he qualifies as a habitual violent offender, the Court still can, within its discretion, sentence him within the guidelines and it would not be an illegal sentence.
* * *
THE COURT: All right. In the case of a life felony or a felony of the first degree I can sentence him to life and the offender shall not be eligible for release for 15 years.
So, at the discretion, it’s a 15-year minimum mandatory. I can sentence him to life in prison. So, I mean, the State wants life, I guess, with a minimum mandatory. However, even if he gets a guideline sentence from this Court — And I don’t know all the facts, just what I heard from the motion which I called and entered an order in limine excluding the prior robbery and facts from Dade County.
But based upon what I know what was filed, he would be somewhere in the mid-range of the guidelines.
[[Image here]]
THE COURT: Well, talk to him. I told you mid-range as a violent under 775.084, paragraph (4)(b), paragraph 1, because it is with the discretion of the trial judge. I can sentence him to live [sic], if convicted, with a 15-year minimum mandatory with a designation of a violent habitual offender.
However, for purposes of negotiations I’ll offer a nine-year sentence mid-range, 6.875 years up to 11.45 years. Knowing that Mr. Small negotiated a 48-month sentence and he was the gunman, I think that’s fair.
(Emphasis added)
Hallmon rejected the offer, proceeded to a jury trial and, upon conviction, was subsequently sentenced to life in prison.
Hallmon contends that all of the facts of the case were before the court when the court made these comments. However, prior to the second trial, the court had not heard testimony from the co-defendant Small, nor had it heard from the victims, other than Marchione. The first time this judge had even heard live testimony was at the second trial, since a different judge conducted Hallmon’s first trial.
At Hallmon’s re-sentencing, following our remand, defense counsel advised the court that since his initial life sentence, Hallmon felt remorseful, had changed, and was no longer arrogant. Accordingly, she asked the trial court to reconsider Hall-mon’s life sentence and re-sentence him to the pre-trial offer of nine years.
In response, the trial court made several findings. The judge recalled the state’s vehement opposition to the court’s offer before the trial and stated that the court could not have maintained the pre-trial offer after hearing the testimony of one of the victims, Ms. Summers. The court explained: “The fear, I will never forget Ms. Summers as long as I live and is [sic] a Judge, the way she shook through the entire procedure. Her last words, Ms. Joannou questioned her, Mr. Hallmon allegedly got up and said he will be back with help and her comment was I am still waiting for him to come back to help me.” *666 The court continued, discussing the impact of the victims’ testimony concerning their fear that they were going to die in the freezer.
The trial court continued, stating that after hearing all of the witnesses, the facts showed that he set up the robbery and was the mastermind who put Small up to it. Further, the trial court noted that Hall-mon’s post-arrest statement to a detective that he would smile at the jury and “beat” this case showed “utter arrogance.”
The trial court pointed to Hallmon’s past involvement in conduct similar to the current offense and that Hallmon used his “fiduciary” sexual relationship with Mar-ehione, the co-defendant, to commit the crime. The court also heard the undisputed proof that Hallmon qualified for re-sentencing as a habitual violent offender as a result of an earlier robbery.
Specifically, the trial court relied upon the fact that Hallmon committed the robbery within one year of serving his earlier robbery sentence, that he used his sexual relationship with Danielle Marchione to further his crime, and that he placed the victims at risk by leaving them in the freezer, while falsely leading them to believe that he was going to get help.
On the facts here, also significant is that the defense initiated the plea discussion and the court, at that time, recognized it was not fully informed with respect to the details of the crime or Hallmon’s background.
Here, as in Mounds v. State, 849 So.2d 1170 (Fla. 4th DCA 2003), the trial court did not push the defendant to accept the offer and provided an explanation for the sentence finally imposed. In fact, here, there is evidence in the record indicating that, when the plea was offered, the court knew much less about the case than at the time of sentencing. In fact, the trial court relied, in significant part, upon matters which occurred during trial, including both testimony and demeanor, adding “[f]rankly, the things that I heard during the course of the trial stunned this court.”
Here, there is no showing that the trial court-departed from its role as an impartial arbiter. The court did not urge Hall-mon to accept a plea and did not state or imply that the sentence imposed would hinge on future procedural choices, such as the right to trial. Additionally, at the time of the plea discussion, the court did not know with certainty that Hallmon would, in fact, be found to be a habitual violent offender, nor had the court heard the state’s argument as to why a life sentence was appropriate for Hallmon. There is also nothing in the record giving reason to question the trial court’s statement that the victim’s testimony “stunned” the court.
Therefore, considering the Wilson factors, we cannot conclude that under the totality of the circumstances, this sentence was vindictive and a violation of due process.
STEVENSON and HAZOURI, JJ., concur.