CIKLIN, J.
In this opinion, we discuss the law surrounding the concept known as “vindictive sentencing.”[1] The state charged Luckner Pierre with two counts of sexual battery on a person twelve or older but less than eighteen by a person in a position of familial or custodial authority,[2] and offered him seventeen years imprisonment in exchange for a guilty plea. Pierre ultimately rejected the offer, exercised his right to trial, and was found guilty. The trial court then imposed two twenty-five-year sentences, concurrent with each other, which Pierre claims amounts to a vindictive sentence. Because the totality of the circumstances reveals that the trial court did not impose a vindictive sentence, we affirm.
On April 6, 2010, the state charged Pierre with two counts of committing sexual activity with a child between August 1, 2009, and January 26, 2010.
On January 25, 2011, the trial court conducted a calendar call in which an assistant state attorney announced that, due to a problem obtaining a translation of Pierre’s confession, and Pierre’s decision to reject a plea offer, the state was not ready to proceed to trial and needed a week to obtain the translated confession. Pierre did not object to the postponement and the trial court agreed to it. The trial court then made the following inquiry regarding plea negotiations:
The court: What was the plea offer that is being rejected by Mr. Pierre?
*322 Defense counsel: It was twenty years, judge.
The court: Twenty years in the Department of Corrections?
Mr. Pierre—
What is the — sexual activity with a child, two counts; what penalty does that crime carry?
The state: Thirty years apiece, Your Honor.
The court: All right. Mr. Pierre, do you understand that the State of Florida has made a plea offer to you of twenty years in this case?
Pierre: Yes.
[[Image here]]
The court: All right, and is it your decision to reject that and go to trial?
Pierre: Well, is there any way that I can get lower than twenty years, just something less?
The court: Well, this is a — you have three options; let’s talk about them together so you understand. Number one, you can go to trial and make the State of Florida prove your — the case against you to a jury, and if they find you guilty you face up to sixty years in the Department of Corrections; that’s option one. Option two, you can accept the state’s plea offer of twenty years and resolve your case. Option three, you can plead guilty to me without any promises from me as to what sentence I would give to you. I know nothing about you or this case; during the time period after I take your plea, I would investigate that and I would hear from both your attorney and you and your Mends and your family and then I would hear from the assistant state attorney, and they would all make recommendations to me and I will give you a sentence that I believe is fair and just. I don’t know what it would be; it — but that’s the three options.
Pierre: Well, earlier we talked about seventeen years; do you think that the twenty years could be lowered?
The court: Well, that’s between you and the State of Florida. If the State of Florida is willing to lower it to seventeen years, then that’s between you and them.
The state: If he wants to plea to seventeen years, I’ll give him five minutes to make that decision.
The court: All right, the State of Florida has offered you seventeen years; do it right now if you want to do it.
The state: It’s going to be a plea, Your Honor.
The court: All right, Mr. Pierre, [defense counsel] is going to assist you in drawing up the paperwork, and then I’ll take your plea, all right? That will resolve your case.
After a thirty-minute recess, the trial court engaged in a plea colloquy during which the following exchange occurred:
The court: Mr. Pierre, it’s been represented to me by your attorney ... who is standing right next to you here in court, that in case number 2010CF2859 you wish to change your previously entered plea of not guilty and enter a plea of guilty; is that right, sir?
Pierre: Yes, yes.
The court: Has anyone in this world forced you, pressured you, or threatened you in any way to get you to plead guilty?
Pierre: Well, the only threat is just that my family, you know, that has pretty much not believed anything that I had to say — so that’s the only threat that I can see.
*323 The court: Well, is that — in other words, when I ask you that question here’s what I’m trying to find out; I’m trying to find out if anybody has forced you to enter this plea of guilty in any way. I want to make sure you’re doing this freely and voluntarily, your own free choice. Is this your free choice, to enter this plea of guilty, or is somebody in your family forcing you to do this?
Pierre: Well, it’s not my choice.
The court: This is not your choice, to plead guilty?
Pierre: No.
The court: All right, you want to go to trial then?
Pierre: Yes, I want to go to trial.
The court: Okay. All right. Well, then you can certainly go to trial but you’ve just told us that you wanted to take the seventeen-year plea offer that the state had given to you. In order to take seventeen years in prison, you have to plead guilty; you can’t maintain your innocence and take seventeen years in prison. Do you understand?
Pierre: I understand.
The court: So you want to go to trial?
Pierre: Yes.
The court: And you do not want to accept the seventeen years?
Pierre: No.
The court: Okay. All right, we’re back on the trial.
The matter proceeded to non-jury trial on February 3, 2011. The victim, eighteen at the time of the trial, testified that until recently she believed Pierre to be her father her entire life. She said she found out after Pierre raped her that he was not her father. In August of 2009, Pierre started making her have sex with him. She said that he hit her when she tried to resist and he forced her legs open. He forced her to have sex with him two or three more times, with the last time occurring in December of 2009. The victim testified that she was sixteen when the first rape occurred and seventeen during the last one.
Pierre’s recorded confession was played for the court. Pierre then testified that his confession was accurate and he did not lie to law enforcement. On cross-examination, he acknowledged that he thought of the victim as a daughter and he vaginally penetrated her when she was sixteen and seventeen.
After closing arguments, the trial court found Pierre guilty of both sexual battery counts.
The trial court held a sentencing hearing on April 1, 2011. The state requested that Pierre be sentenced to two twenty-year sentences to run consecutively for a total of forty years. The state argued that the crimes were some of the worst imaginable. Pierre told the court that he was not a bad person and denied beating the victim. Defense counsel asked for a sentence at the bottom of the guidelines range, just short of seventeen years, because Pierre had a clean record for forty-seven years until the current convictions. Pierre’s family members also offered brief testimony and requested probation for him. The trial court then made the following statement:
This is a rare circumstance as a trial judge, not only to preside as the fact finder but also to really not hear contested facts during the course of a trial. [The victim] testified and indicated— what I’ll cover in just a minute — that these really despicable crimes occurred, and then the defendant then testified and admitted to having sex with his stepdaughter. I mean it is not his natural daughter, it is his stepdaughter; that *324 is not mitigating but it is a fact that must be recognized. Obviously based on that — those facts, he was found guilty.
Folks, and I say this to the Pierre family ..., this is a crime that is not deserving of probation. When someone who is in a position of trust violates that position of trust in a manner in which they have sex with a person who that — the child believes is her father, I can’t imagine ever under any circumstances believing that the appropriate sentence for that type of criminal conduct would be probation; it is just not probationary-type criminal activity.... It must be remembered at the time that the defendant forced himself on her she believed that he was her natural father, and if you can only imagine for a moment believing as you’re sitting there in your home, in a place that you feel safe and secure, that your father is raping you, there really cannot be any kind of worse factual scenario. Subsequently she found out that he in fact was a stepfather of hers, but that doesn’t mitigate the fact that he forced himself on her, that he forced her legs open, he penetrated her with his penis, he had sex with her on multiple occasions against her will. She didn’t know any better; what is her father doing to her? All of these times — it is something that is extremely, extremely disturbing. Nevertheless, the defendant admitted what he did, the defendant has no prior criminal record, and therefore I will take all of those things in fact in fashioning what I believe is a fair sentence for this defendant for this criminal conduct in this case.
The trial court then imposed two twenty-five-year sentences, to be served concurrently.
Claiming he received a vindictive sentence, Pierre appeals.
Whether the trial court imposed a vindictive sentence is a question of law which this court reviews de novo. Parker v. State, 977 So.2d 671, 672 (Fla. 4th DCA 2008). While Pierre never objected to the sentence at the time it was imposed, “imposition of a vindictive sentence is fundamental error that may be raised for the first time on appeal.” Mendez v. State, 28 So.3d 948, 950 (Fla. 2d DCA 2010) (citation omitted).
“When there is judicial participation in plea negotiations, followed by a harsher sentence, the supreme court has adopted a totality of the circumstances approach in determining whether a presumption of vindictiveness arises.” Mounds v. State, 849 So.2d 1170, 1171 (Fla. 4th DCA 2003) (citing Wilson v. State, 845 So.2d 142, 155 (Fla.2003)). The defendant has the burden to demonstrate vindictiveness, which, if met, creates a re-buttable presumption of vindictiveness, which the state must then rebut. Vardaman v. State, 63 So.3d 925, 927 (Fla. 4th DCA 2011).
“Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a ‘reasonable likelihood’ that the harsher sentence was imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial.”
Id. (quoting Wilson, 845 So.2d at 156).
Other factors to consider are:
[W]hether the trial judge initiated the plea discussions with the defendant; whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by imply *325 ing or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; the disparity between the plea offer and the ultimate sentence imposed; and the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.
Mounds, 849 So.2d at 1171-72.
Judicial participation in plea negotiations often involves the trial court itself offering a specific sentence in exchange for a guilty plea.[3] See Vardaman, 63 So.3d at 928-29 (judicial participation where the trial court offered a sentence in exchange for a plea); Mendez, 28 So.3d at 949 (same); Evans v. State, 979 So.2d 383, 384-86 (Fla. 5th DCA 2008) (same); Longley v. State, 902 So.2d 925, 926-27 (Fla. 5th DCA 2005) (same).
Judicial vindictiveness concerns, however, “may [also] arise where the trial [court] does not make the offer itself but, rather, becomes actively involved in an unsuccessful plea bargaining discussion between the State and the defendant.” Wilson, 845 So.2d at 154 (citing McDonald v. State, 751 So.2d 56 (Fla. 2d DCA 1999)). In the instant case, the trial court’s participation in plea discussions was minimal. The court’s actions can be reasonably described as a neutral effort to facilitate plea discussions between the state and Pierre.
Further, it appears that the trial court raised the topic of the state’s plea offer to ensure that Pierre understood what that offer meant (twenty years versus a maximum possible sixty years). The trial court did not urge Pierre to accept the state’s plea offer. In fact, when Pierre asked if there was any way to receive a prison sentence of less than twenty years, the trial court properly and neutrally explained Pierre’s three options (accept the negotiated plea offer from the state, go to trial, or enter an open plea to the court). *326 The trial court admitted to knowing little about the case and stated that it would need to learn the specific details surrounding the charges against Pierre and hear from Pierre himself, Pierre’s attorney, defense witnesses and the state’s sentencing recommendation before making any sentencing decision. The trial court never offered Pierre a sentence in exchange for a plea and never advocated for the state’s plea offer at any point. We find that the record does not support a finding of vindictiveness.
Even assuming the trial court did actively participate in plea negotiations, the totality of the circumstances does not give rise to a presumption of a vindictive sentence. The state made a plea offer of seventeen years in open court and the trial court relayed this offer to Pierre which he initially accepted. At no point did the trial court suggest that any sentence it might impose, if given the opportunity following an open plea or trial, would be contingent upon whether Pierre exercised his right to trial. In fact, when Pierre decided to withdraw his plea and proceed to trial, the court made sure that Pierre understood that the state’s offer of seventeen years was no longer guaranteed if Pierre went to trial — an important point for Pierre to understand when rejecting the plea offer.
The disparity between the plea offer (seventeen years) and the sentence imposed (twenty-five years) is slightly less than a 50% increase, which does not appear to be particularly significant. Compare Mounds, 849 So.2d at 1172 (finding a 75% increase — -from sixty months to 105.25 months — to be “significant” but “not extreme”), with Vardaman, 63 So.3d at 929 (finding a “vast disparity” between the original offer of eight years and the sentence imposed of thirty years, or a 375% increase). Thus, the disparity between the plea offer and the sentence imposed does not support a finding of vindictiveness.
Finally, the record is replete with facts that support the trial court’s decision to impose a sentence greater than that offered by the state during the plea negotiations. The trial court acknowledged that it knew nothing about Pierre or his case during the plea discussion except for the charges against him. The trial proceedings, however, revealed many additional facts and disturbing details about the case unknown to the trial court at the earlier stage of plea negotiations: The trial court observed appalling testimony about the victim’s repeated rape by Pierre, whom she thought was her father. Simply put, the trial court personally heard many more facts and details underlying the crimes at the conclusion of the trial than during the plea discussions. The trial court explained how horrendous Pierre’s crimes were, describing them as “really despicable” and “extremely, extremely disturbing,” and observing that “there really cannot be any kind of worse factual scenario.” We believe that these comments accurately describe Pierre’s criminal conduct and provided a factual basis for the trial court’s decision to impose a sentence greater than that offered by the state during plea negotiations.
Therefore, because Pierre has not met his burden to demonstrate that the trial court imposed a vindictive sentence, we affirm.

Affirmed.

STEVENSON and GERBER, JJ., concur.

. "The term vindictive — when used in the context of a claim of vindictive sentence — is a term of art which expresses the legal effect of a given course of action, viewed objectively, and does not imply any personal animosity between the court and the defendant." Mendez v. State, 28 So.3d 948, 950-51 (Fla. 2d DCA 2010) (citation and quotation marks omitted).

. See § 794.01 l(8)(b), Fla. Stat. (2009).

. Limited judicial participation in plea negotiations is permitted provided that certain safeguards are employed "to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.” State v. Warner, 762 So.2d 507, 513 (Fla.2000) (citation and quotation marks omitted). The Florida Supreme Court has imposed several restrictions on judicial participation in plea negotiations.
The first restriction placed on judicial participation is that a trial judge cannot initiate the plea dialogue. Id. However, the judge "may ... participate in such discussions upon request of a party” and "[o]nce involved, the court may actively discuss potential sentences and comment on proposed plea agreements.” Id. at 513-14. The question for the court’s consideration is: "Knowing what you know today, what do you think the sentence would be if the defendant pled guilty, as charged?” Id. at 514.
Second, the supreme court made clear that the judge must "neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant’s right to trial.” Id. Further, although the preliminary evaluation made by the judge is not binding, the defendant who pleads guilty or nolo contendere in reliance on that evaluation has the absolute right to withdraw the plea if the judge later determines that a greater sentence must be imposed. See id. Finally, the supreme court required that a record be made of all plea negotiations involving the trial judge. See id.
It was with these restrictions and caveats that the supreme court sought to "accommodate! 1 the competing interests involved” and allow for the benefits of judicial participation while protecting the integrity of the judicial system and the rights of defendants. Id. at 512-13. The Warner court emphasized that although the delineated safeguards "apply in those cases where a trial court agrees to be an active participant in plea bargaining discussions, the court may decline to assume such a role.” Id. at 514.