MAKAR, J.
Alicia F. Baxter claims that the imposition of a twenty-year state prison sentence, which followed her rejection of the trial court’s offer of eleven months and twenty-nine days in county jail, meets the standard for what is known as “judicial vindictiveness.” In addition, she claims the trial court erred by refusing to allow her to accept the initial offer after she rejected it. For the reasons that follow, we vacate her sentence and remand for resentencing.
I.
On Halloween Day 2009, Ms. Baxter and codefendant, Damian Johnson, had two goals: make methamphetamine and have sex. They first embarked on the dangerous and toxic process of attempting to manufacture meth, neither being skilled in the task. Johnson bought various ingredients and supplies; Ms. Baxter bought Su-dafed, a necessary component, at a local drug store. The venue for their portable “meth lab” was a motel in Marianna, Florida, at which they requested a smoking room. Shortly after they checked in, the manufacturing process was begun — but it soon ended dramatically. Johnson — still under the effects of meth taken the night before — shook various ingredients in a Gatorade® bottle, which exploded into the bathroom area and then ignited, causing significant injury to him. Johnson and Ms. Baxter fled the room, leaving behind substantial damage to the motel and inconvenience to the many people who had to flee the premises when police and firefighters arrived.
Ms. Baxter was charged with attempted manufacture of a controlled substance, unlawful possession of a listed chemical, and arson to an occupied structure, the latter punishable by up to thirty years of imprisonment.[1] Johnson, who also faced similar charges, agreed to testify against Ms. Baxter.
Almost three years passed between the motel incident and Ms. Baxter’s trial. During that time, at some point the trial judge became involved in plea discussions, though it is somewhat unclear who initi *730 ated them due in part to at least three off-the-record conversations.[2] The first, for which no transcript exists, occurred in conjunction with the initiation of the plea bargaining process. Ms. Baxter avers that the trial judge discussed with Ms. Baxter’s counsel, Assistant Public Defender Guy-Green, what sentence he would impose if Ms. Baxter entered a “straight up” plea at that time. The trial judge allegedly offered to sentence Ms. Baxter to two years of drug offender community control if the first eleven months and twenty-nine days were spent in county jail, followed by three years of drug offender probation, followed by ten years of administrative probation, which would expire when restitution was paid.
On March 15, 2011, the trial court held a plea hearing at which Mr. Green accepted the deal on her behalf. The trial judge sentenced her to the agreed upon sentence. The prosecutor was present, but did not speak. Before the hearing concluded, however, Ms. Baxter told the trial judge that she wanted to withdraw her plea. This exchange ensued:
COURT: All right. You sure you know what you’re doing, ma’am?
DEFENDANT: I hope so.
MR. GREEN: Can I—
COURT: You’re looking at 50 years; do you understand that?
DEFENDANT: Yes, sir.
COURT: It’s withdrawn. Set it for trial. There ain’t no more talking, Mr. Green, that’s all I can do. Is she set for trial next week?
Later that day, after the plea hearing had concluded, the trial judge along with Mr. John Y. Roberts, (who was later appointed as Ms. Baxter’s conflict counsel), the Clerk, and three unidentified males held a second off-the-record conversation. Mr. Roberts told the trial judge that Ms. Baxter “was outside throwing up and she said it’s about the adjudication.... She wants to take the deal, she just kind of was ... she wants to take it.” The conversation continued, in relevant part, as follows:
COURT: Okay, We don’t need to take it today. There’s too much on the record.
MR. ROBERTS: Want me to tell her to come (indiscernible)?
COURT: I don’t know. I don’t need to take a plea and her throwing up and stuff today. See, this is going to come back. She’s going, she’s going to change her mind when she gets to the jail, so I don’t know. We might complete her after drug court. What have we got after drug court tomorrow? Talk to Guy, but I mean, like, now, you know, and I’m not sure I’m going to take it tomorrow, but I mean, like, you know, I understand, but I’m just saying—
MR. ROBERTS: Yes, sir.
COURT: —it’s better if we let some time pass.
MR. ROBERTS: Yes, sir.
The next day, March 16, 2011, a hearing was held to set the trial date. Ms. Baxter apologized for her actions the previous day, saying that she was nervous. At *731 some point that same day, the trial judge, along with Mr. Roberts and the prosecutor, held a third off-the-record conversation — without Ms. Baxter present — in which Mr. Roberts stated that he did not know whether Ms. Baxter wanted to take the plea offer, but assumed she would do so.[3] The relevant parts of this conversation are as follows:
COURT: I don’t think I’m going to take it.
MR. GREEN: Okay.
COURT: I’d just sent that guy to prison for five and a half years for the same thing, I guess.
[[Image here]]
But this, this one just, it’s, it’s got me to the point I’m real uncomfortable about everything. I mean, I don’t want to have to beg somebody to take it and I understand it’s not your fault. The cops don’t like it. We’re all just better off doing our jobs and just try her and whatever happens, I won’t necessarily nail her but you know, if they convict her she’s probably looking at prison. I don’t know, but I’m just saying it’s just easier on all of us—
MR. GREEN: Okay.
COURT: —to do our job. We’re going, we’re going to bend over backwards to help this girl and it’s going to come back to hurt us. One way or the other, something’s going to happen. I mean, she’s going to get in the jail and raise hell about something and, you know, fall and hurt her back or some b* * * * * *t. I mean I just see this coming, I’ve seen it happen too many times and I just don’t need to take a chance. I was doing it for you and—
MR. GREEN: Okay, we’ll I’m—
COURT: —bless your heart. You know what I’m saying.
The trial was conducted on August 28, 2011, the jury finding Ms. Baxter guilty of all three charges (she was now represented by Clifford Davis). On October 5, 2011, the trial court sentenced her to five years for Count I; fifteen years for Count II; and twenty years for Count III, all sentences to run concurrently (with credit for time served).
Ms. Baxter’s codefendant, Mr. Johnson, was sentenced by a different judge to eleven months and twenty-nine days in county jail, a sentence that had been offered by the trial judge in Ms. Baxter’s case.[4] Specifically, Mr. Johnson’s trial counsel asked his trial judge to adhere to Ms. Baxter’s judge’s recommendations, which he did. On October 19, 2011, Ms. Baxter filed this appeal. During the appeal’s pendency, Ms. Baxter filed a Motion to Correct Sentencing Error pursuant to 3.800(b)(2), Florida Rules of Criminal Procedure, on July 5, 2012, which was denied by the trial *732 court in a detailed order dated September 4, 2012.
II.
We address two issues: (1) whether the totality of the circumstances surrounding the trial court’s involvement in the plea offer and Ms. Baxter’s ultimate sentence demonstrate “judicial vindictiveness” in sentencing as that concept has developed over time; and (2) whether the trial court erred under the circumstances by refusing to allow Ms. Baxter to accept the trial court’s plea offer after she initially rejected the offer.
A. Judicial Vindictiveness-Preservation
Before reaching the merits, we address the issue of preservation of judicial vindictiveness claims. Ms. Baxter contends her Rule 3.800(b) motion is an appropriate mechanism for asserting her judicial vindictiveness claim, which was preserved by the filing and subsequent denial of the motion. The State argues her claim was not preserved because Ms. Baxter failed to object on this basis during the sentencing hearing on October 5, 2011; it further argues that a Rule 3.800(b) motion is not an appropriate vehicle for appellate review of a judicial vindictiveness claim. We agree with the State on these points. We align ourselves, however, with the Second District, which likewise rejects the use of a Rule 3.800(b) motion as a means for raising a judicial vindictiveness claim, but which allows for review under fundamental error analysis. Mendez v. State, 28 So.3d 948, 950 (Fla. 2d DCA 2010) (“imposition of a vindictive sentence is fundamental error that may be raised for the first time on appeal.”).
In rejecting the use of Rule 3.800(b) in this context, we note that the Florida Supreme Court has explained that the rule is intended to provide defendants with a mechanism for correcting technical sentencing errors promptly and thereby preserve them for appellate review. Jackson v. State, 983 So.2d 562, 572 (Fla.2008) (“Rule 3.800(b) is intended to permit defendants to bring to the trial court’s attention errors in sentence-related orders, not any error in the sentencing process.”). Here, no technical error is at issue, only the question of whether the process by which the trial judge arrived at the sentence imposed met due process standards under judicial vindictiveness principles.
We acknowledge that using a Rule 3.800(b) motion may be a more convenient way of presenting a judicial vindictiveness claim, particularly if a defendant is unaware of evidence supportive of such a claim at the time of sentencing (such as the off-the-record conversations discovered by appellate counsel in this case). Such a motion may also avoid the awkwardness of defense counsel objecting and claiming— immediately upon sentencing by a trial judge — that the sentence just announced is the product of judicial vindictiveness. .We believe, however, that Rule 3.800’s parameters simply cannot be remolded to accommodate such claims. Instead, the better approach is to allow for de novo review on appeal under the fundamental error doctrine, as the Second District has done. See also Philip J. Padovano, Florida Appellate Practice § 27:3, & n. 1 (2011 ed.) (“A fundamental error in a criminal case can be corrected on appeal even if the issue had not been preserved for review by a timely motion or objection in the trial court.”).
B. Judicial Vindictiveness-The Merits
Under principles of due process, the United States Supreme Court developed the concept of judicial vindictiveness, which initially arose in the context of re-sentencings where defendants who prevailed on appeal were subject to greater *733 sentences on remand than those from which they had appealed. See e.g., North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The concept was later extended to initial sentences where the sentencing judge had been involved in plea offers or deals that the defendant had rejected, which is the context of this case.[5]
Judicial vindictiveness has two strains: actual vindictiveness and constructive vindictiveness. The former involves situations where evidence exists that a trial judge has acted with vindictive intent to impose a harsher sentence because the defendant exercised his right to a jury trial. See Wilson v. State, 845 So.2d 142 (Fla.2003); Zeigler, 60 So.3d 578. The latter — which is more common and is at issue in this appeal — involves situations where the circumstances of the sentencing support a presumption that the sentence imposed is improper and the State has not articulated sufficient reasons to overcome the presumption.
Our supreme court does not prohibit judicial participation in the plea bargaining process; but a judge’s involvement must be limited “to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.” State v. Warner, 762 So.2d 507, 513 (Fla.2000) (citing People v. Cobbs, 443 Mich. 276, 505 N.W.2d 208, 212 (1993)) (stating that unlike the federal system and at least six states, Florida does not prohibit judicial participation in the plea bargain process but certain delineated minimum safeguards apply, including the prohibition that the trial court initiate the plea dialogue).
In a follow-up case to Warner, the supreme court in 2003 held that a presumption of vindictiveness is not warranted in every case in which a trial court participates in the plea bargaining process simply because a defendant ultimately receives a harsher sentence after a hearing or trial. Wilson, 845 So.2d at 150. Instead, the court concluded that the totality of the circumstances must be considered to determine whether a presumption of judicial vindictiveness arises. 845 So.2d at 152; see also Mendez, 28 So.3d at 950 (“Appellate courts should look at the totality of the circumstances when determining whether a defendant’s constitutional right to due process was violated by the imposition of an increased sentence after unsuccessful plea negotiations in which the trial court participated.”).
In doing so, the court set out a non-exhaustive list of four factors for determining whether a reasonable likelihood exists that the harsher sentence was “imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial.” Wilson, 845 So.2d at 156.
*734 (1) whether the trial judge initiated the plea discussions with the defendant in violation of Warner;
(2) whether the trial judge, through his or her comments on the record, appears to have departed from his or 'her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial;
(3) the disparity between the plea offer and the ultimate sentence imposed; and
(4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.
Id. (internal citations omitted). An appellate court is to consider these four factors, along with any others of relevance, in determining whether a presumption exists. While no one factor predominates, the court emphasized that satisfaction of factors (1) or (2) alone may give rise to a presumption of judicial vindictiveness. More specifically, the Court stated:
As regards factors (1) and (2), if the judge participates in the plea negotiations beyond what is contemplated by Warner, or by his or her comments appears to have departed from the role of a neutral arbiter, then these actions alone may give rise to a presumption of judicial vindictiveness that would shift the burden to the State to produce affirmative evidence on the record to dispel the presumption.
Id. (emphasis added). Of course, the “presumption of judicial vindictiveness may arise from judicial participation in plea discussions regardless of which party initiated those discussions.” Wilson v. State, 951 So.2d 1039, 1043 (Fla. 3d DCA 2007). The reason is that because judicial vindictiveness is based on the totality of the circumstances, no one factor is required or predominates over the others.
Our analysis of whether a defendant’s sentence is the product of judicial vindictiveness involves a question of law subject to de novo review. Trotter v. State, 825 So.2d 362, 365 (Fla.2002). We begin with the first factor: whether the trial judge initiated the plea discussions. A “trial court must not initiate a plea dialogue; rather, at its discretion, it may (but is not required to) participate in such discussions upon request of the party.” Warner, 762 So.2d at 513. To facilitate our review, “[a] record must be made of all plea discussions involving the court.” Id. at 514.
We immediately face a conundrum because the trial court’s detailed and thorough order says it was Ms. Baxter’s trial counsel who initiated plea discussions, but the requisite record of “all plea discussions involving the court” provides no definitive support for this finding. The trial court’s order appears to be based solely on the “on-the-record” plea discussions with the court, but at least three off-the-record discussions occurred that create some uncertainty on the matter. On this point, the State concedes that the existence of these off-the-record plea discussions may alone be enough to establish a presumption of judicial vindictiveness, stating:
Since some of the plea discussions occurred off-the-record against the mandate in Warner, it appears that this “alone may give rise to a presumption of judicial vindictiveness”, Wilson, 845 So.2d at 156, though it should be noted that “may” denotes a permissive direction.
We elect not to place decisive weight on the existence of off-the-record plea discus *735 sions, even though — as conceded — they violate the directive in Warner. Instead, we consider their existence and content as part of the overall analysis of whether a presumption is shown.
Turning back to the first factor, the State acknowledges that Ms. Baxter “correctly points out that the record on appeal does not contain the discussion in which the trial judge extended the plea offer in the first place.” While we presume as correct the trial judge’s finding that defense counsel initiated plea discussions, we also have a duty to verify it, which — as the State notes — is not clear from the record on appeal. In harmonizing the directive from the Florida Supreme Court that a “record of all plea discussions involving the court” must be made with the respected trial judge’s finding that he did not initiate plea discussions, we hold this first factor in equipoise; our inquiry continues because the totality of all factors is considered.
As to the second factor, the record, particularly the content and context of the transcribed off-the-record conversations, makes it appear the trial court became sidetracked from its role as narrowly-defined in Warner and Wilson, but not because of “vindictiveness” in the ordinary sense of that word. The Third District has noted aptly that constructive judicial vindictiveness has been stripped of the requirement that the trial judge actually acted with malice:
As used in the sentencing process the word “vindictive” has lost its dictionary definitions. See American Heritage Dictionary 1430 (1969 ed.)(“disposed to seek revenge”; “unforgiving; bitter; spiteful”). The sentencing term “vindictive” has become a “term of art,” describing the legal effect of a given objective course of action, generally not implying any personal or subjective animosity on the part of the trial judge. That being the case a defendant challenging a sentence as being vindictive may not need to demonstrate that the sentencing judge was acting out of any degree of malice.
Nairn v. State, 837 So.2d 519, 520 (Fla. 3d DCA 2003). Instead, the doctrine is grounded in due process concerns as a prophylactic measure to allow trial judges to be invited to become involved in plea discussions, but doing so at (perhaps more than) an arm’s length. Accurately and dispassionately conveying information to an accused in plea discussions is permissible; actively encouraging or discouraging a particular plea or making comments beyond what Warner and Wilson allow are not. Here, the record shows a mixed bag. The trial court engaged in wholly proper discussions with Ms. Baxter about the terms and nature of the plea deal she had been offered, correctly advising — for example — that she was facing up to fifty years in prison if convicted at trial. Likewise, the trial court’s decision to postpone the plea hearing when Ms. Baxter became ill was a wise move to assure that the sentence imposed was not the product of fleeting circumstances.
In addition, however, the trial court made off-the-record comments that — as read off the transcript or listened to on the audio-recordings — appear to reflect something other than a dispassionate stake in the proceeding. Comments such as “I don’t want to have to beg someone to take it [i.e., the plea]” and that “we’re going to bend over backwards to help this girl and it’s going to come back and hurt us” reflect frustration with Ms. Baxter and the court’s decision to become involved in plea discussions. Comments that the plea deal was for the benefit of Ms. Baxter’s trial counsel, likewise, appear to reflect that the trial judge may have had mixed motivations for being involved in plea dis *736 cussions. The trial court also said that “I won’t necessarily nail her but you know, if they convict her she’s probably looking at prison.” While a true statement, i.e., that a conviction would require a minimum amount of time in state prison, the trial court’s emphasis on this fact can be viewed as leveraging Ms. Baxter’s counsel to convince his client to take the plea deal, even if that was not the intent.
The passing comment that the “cops don’t like it” makes it appear the proposed plea had been deemed unacceptable by police officials thereby adversely affecting the trial judge’s determination of whether to keep the offer open. Finally, the trial judge made commentary on Ms. Baxter personally, that she was “going to get in the jail and raise hell about something and, you know, fall and hurt her back or some b* * ⅜ ⅞ ⅜ *t. I mean I just see this coming, I’ve seen it happen too many times and I just don’t need to take a chance.” These off-the-record comments, all made while plea negotiations were ongoing and without Ms. Baxter present, depart from the strict requirements of Warner and Wilson that give trial judges little flexibility in the exercise of their neutral role in the plea negotiation process.[6] As the supreme court in Wilson said, the “same flexibility that prosecutors have to actively engage in plea negotiations does not extend to judges. That is why the requirements of Warner must always be strictly followed.” 845 So.2d at 156. We conclude that the trial judge’s comments, at least in the context of ongoing plea discussions, create an aura inconsistent with neutral and dispassionate decision-making, weighing in favor of the second factor, which requires that such comments need only “appear” to depart from the impartiality expected of an arbiter.
Next, the State essentially concedes the third factor, noting that Ms. Baxter “correctly points out the disparity,” that the “ultimate sentence speaks for itself,” and that this disparity “is not a factor that in and of itself gives rise to a presumption of vindictiveness” (unlike factors (1) and (2), which can). We agree that this factor alone does not establish the presumption. But Ms. Baxter’s twenty-year prison sentence is twenty times greater than the plea offer of eleven months and twenty nine days; it is almost six times greater than the lowest permissible minimum of 39.9 months. See Wilson v. State, 951 So.2d at 1044 (“disparity of behemothic proportion” existed where ninety-year sentence imposed after rejection of a state-offered sixty-seven month sentence; “difference between the State-offered plea, which the trial court was prepared to accept, and the sentence imposed is almost eighty-four and a half years. The sentence ultimately imposed is over sixteen times that contemplated in the plea offer.”). On this record, the disparity between the offer and the sentence imposed is sufficient to meet the third factor.
Finally, the trial court relied on two facts to justify the dramatic increase in the sentence: (1) Ms. Baxter was almost thirty *737 years old, as opposed to twenty; and (2) the hotel was completely booked on the evening of the fire. It is true that the trial court has sentencing discretion and is not bound to its preliminary evaluation of the case, see Warner, 762 So.2d at 514, but here Ms. Baxter’s age was of record from the filing of the State’s information. See Cambridge v. State, 884 So.2d 535, 538 (Fla. 2d DCA 2004) (nature of the crime, generally known prior to trial, is insufficient basis for significantly increased sentence); see also Mendez, 28 So.3d at 951 (information that is part of the record existing before trial not supportive of significantly increased sentence). Indeed, the State’s answer brief does not even mention Ms. Baxter’s age as a justification for the increased sentence. Rather, the State focuses entirely on the occupancy of the hotel on the night of the crime, which could play a relevant role, as it affected the trial judge’s view at sentencing because he first learned during the trial that the hotel had been sold out (versus partially booked). That a dangerous meth lab fire had occurred at the hotel, a co-defendant had been injured, and firefighters had been called to the scene, however, were all known during plea negotiations; no hotel guest (other than co-defendant Johnson) was injured, the hotel sprinkler system extinguished the flames in the bathroom before the fire fighters arrived, and the damage to the other rooms was a result of the sprinkler system. Thus, the only new information relied upon for the increase in sentence was the extent of the hotel’s occupancy. This additional fact— though providing a basis for an increased sentence — does not justify the twenty-fold sentence imposed compared to the negotiated plea, particularly given what was known prior to trial during plea negotiations. We in no way minimize the situation that Ms. Baxter and her co-defendant caused; the legislature justifiably has deemed fires and explosion caused by felonious acts to be subject to potentially severe sanction. But the jump from the original plea deal extended to Ms. Baxter (and accepted by Johnson) to the one imposed is not fully explained by the hotel’s occupancy alone.
Based on our review of the four factors and the conceded violation of Warner, we disagree with the State that the “case at hand amounts to only a weak showing of vindictiveness in sentencing.” While no one factor or aspect of the record is conclusive, we find that the totality of the circumstances is sufficient to establish a presumption that Ms. Baxter’s sentence meets the standard for constructive judicial vindictiveness. The State’s sole proffered justification for overcoming the presumption, the hotel’s occupancy, is identical to one of the two reasons the trial court gave to justify the sentence imposed (the other being Ms. Baxter’s apparent age). Neither justification is sufficient to overcome the presumption that due process was not accorded. We recognize that the trial judge sat through the trial and heard testimony about the effect of Ms. Baxter’s criminal conduct on the booked hotel, and that he became more fully cognizant that Ms. Baxter was nearing thirty versus twenty-something. But, as we have explained, neither factor individually, nor both collectively, is enough on this record to inflate by twenty-fold the sentence ultimately imposed.
C.
Ms. Baxter also claims that the trial court erred by refusing to allow her to accept the plea offer after she rejected it. Pursuant to Florida Rule of Criminal Procedure3.172(g), a plea offer or negotiation is not binding until the trial court makes the requisite inquiries required by *738 the rules. The rule states that “[u]ntil that time, it may be withdrawn by either party without any necessary justification.” Id. The trial court is not a party. Thus, this rule does not apply when the trial court extends a plea offer. This is so because a trial court must remain neutral, while the parties are not neutral and can accept or reject offers that are advantageous to their respective positions. Here, the trial court held a plea colloquy to determine whether Ms. Baxter was making a knowing and voluntary decision. She changed her mind. At that point or any point prior, if the offer originated from the State, then the State could have withdrawn the offer, but the trial court could not since it was not a party. The inapplicability of rule 3.172(g), however, does not dispose of this issue.
In Ingram v. State, the Fourth District applied the tenets of contract law to the plea process and opined that “when appellant refused to admit his guilt and insisted on making a best interests plea, there was no acceptance of the plea offer made by the trial judge, no meeting of the minds, and, hence, no binding plea agreement.” 763 So.2d 352, 353 (Fla. 4th DCA 1998) (holding that the trial court may include a condition in the plea offer that requires defendant to admit his guilt) (internal quotations omitted). If we apply the full gamut of contract law to the plea negotiation process, then once Ms. Baxter rejected the plea, it no longer existed. After the offer was rejected, either Ms. Baxter, the State or the trial court would have to initiate another plea negotiation to create a new offer, even if it was identical. Accordingly, it was impossible for the trial court to abuse its discretion in this situation by failing to allow Ms. Baxter to accept the offer because once she rejected the offer, it no longer existed.
III.
This case is difficult because it is clothed in the emotionally-charged language of “judicial vindictiveness,” a doctrine so altered from its roots that — as here — relief may be warranted even if the trial judge was not “vindictive” as that word is ordinarily used and defined in the dictionary. The trial judge became very involved in the plea negotiations, voicing thoughts and concerns that might naturally arise in similar circumstances, but which must be made part of the full record of plea negotiations. Commendably, the trial court ultimately voiced that the best course was for everyone to simply do their jobs, which is far easier said than done, but reflecting profound wisdom. For the reasons discussed above, we REVERSE and REMAND for resentencing by a judge who has had no involvement with this case or related cases.
PADOVANO and MARSTILLER, JJ„ concur.

. For example, the Second District applied the concept of judicial vindictiveness to the initial sentencing of a defendant. See Zeigler v. State, 60 So.3d 578 (Fla. 2d DCA 2011). In Zeigler, the trial judge made several remarks to the defendant about the strength to the prosecution’s case and that defendant would "rue the day that [he] didn’t dispose of the case.” Id. at 580. After the jury found him guilty, the trial court sentenced the defendant to forty-five years in prison. Id. The Second District reversed, noting that the trial court’s comments created a presumption of judicial vindictiveness because the trial court advocated for a certain outcome. Id. at 581.

. Section 806.01(l)(c), Florida Statutes, provides: "(1) Any person who willfully and unlawfully, or while in the commission of any felony, by fire or explosion, damages or causes to be damaged: ... (c) Any other structure that he or she knew or had reasonable grounds to believe was occupied by a human being, is guilty of arson in the first degree, which constitutes a felony of the first degree, punishable as provided in s.775.082, s.775.083, or s.775.084.”

. Transcripts of "on-the-record” conversations reflect that plea discussions occurred in open court on March 15 and 16, 2011, which are discussed below. "Off-the-record” discussions also occurred, two of which were electronically recorded, but apparently not transcribed. Ms. Baxter’s appellate counsel made inquiry and obtained recordings of the two "off-the-record” discussions, which were not part of the trial court record and were first filed in this Court as transcribed by the official court reporter. Upon this Court's order, disks containing audio of the two conversations were also filed. The two conversations are in low voices (as sidebar discussions typically are), but are clear enough to be deciphered.

. The record does not indicate whether this conversation took place before, during, or after the hearing.

. During the sentencing hearing, Johnson’s counsel told the trial judge that:
[A]t one point, Judge Wright, prior to him testifying, Judge Wright’s position on this particular case was if he plead [sic], he'd be sentenced to house arrest, followed by probation. He does work out of state when he has an opportunity and we would ask the Court to consider that. We would request some probation. I’ve advised him that that’s not very likely, that the Court may be more inclined to ,go with what Judge Wright had originally offered to both individuals.
He emphasized to the trial judge that "at the time that [Johnson] was going to plead straight up, Judge Wright, at that point, was willing to give him two years house arrest with a year in jail, give him credit for time he did in jail, as well as the inpatient treatment.” Johnson testified that "Judge Wright would let me out if I would go into a one-year rehab program, so I did that and completed that.”

. The State urges that the "trial judge here actually desired the case to proceed to trial” and that "the trial judge decided it was best for the case to proceed to trial instead of resolving it with a plea deal.” It does so apparently to show that the trial judge supported Ms. Baxter's decision to go to trial. In the context of ongoing plea negotiations, however, what a trial judge "desires” or may decide is "best” in terms of whether to proceed to trial is not on the judicial side of the ledger to express; it would be inconsistent with the role of a neutral arbiter as envisioned in Wilson and Warner. Because we do not find the trial judge desired or thought it best for the case to go to trial, our analysis places no weight on this point.