NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DEVON F. EVANS,                        )
                                       )
            Appellant,                 )
                                       )
v.                                     )          Case No. 2D18-515
                                       )
STATE OF FLORIDA,                      )
                                       )
            Appellee.                  )
_____)

Opinion filed September 13, 2019.

Appeal from the Circuit Court for Sarasota
County; Charles E. Roberts, Judge.

Howard L. Dimmig, II, Public Defender, and
Julius J. Aulisio, Assistant Public Defender,
Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Jonathan P. Hurley,
Assistant Attorney General, Tampa, for
Appellee.


LaROSE, Judge.


        Devon F. Evans appeals the judgment and sentences imposed for

burglary of an occupied dwelling and grand theft of a dwelling.  We have jurisdiction.

See Fla. R. App. P. 9.030(b)(1)(A); 9.140(b)(1)(F).  We affirm the judgment without

comment.  We write to explain why Mr. Evans' vindictive sentence claim fails to pass

muster.

## Background

A jury found Mr. Evans guilty as charged. The trial court delayed sentencing pending receipt of a presentence investigation report (PSI). Thereafter, the trial court sentenced Mr. Evans as a habitual felony offender (HFO) to twenty years' imprisonment with a fifteen-year mandatory minimum prison releasee reoffender (PRR) term for the burglary charge. The trial court imposed a concurrent term of five years' imprisonment for the grand theft.

The facts underlying the crimes are not relevant to our disposition. What is pertinent is that, on the morning of trial, the trial court asked whether the parties had tried to resolve the case. The State advised that Mr. Evans qualified as a HFO and PRR and that it "intends to seek both enhancements post trial."[1] The State also reported that Mr. Evans had rejected a proposed seven-year sentence with no sentencing enhancements. The State noted that Mr. Evans' scoresheet reflected a bottom-of-the-guidelines score of about three years.

The trial court encouraged counsel to confer further with Mr. Evans about a plea. Again, Mr. Evans insisted on going to trial. The trial court then proposed an open plea with an eight-year cap. Mr. Evans rejected this proposal and proceeded to trial.

At the subsequent sentencing hearing, the trial court observed as follows:

> Looking at your criminal history, in my opinion, it is
> significant. Since you were a juvenile, there's very little time,
> very few years in which you were not arrested or convicted

---

[1]The PRR designation is not, strictly speaking, a sentence enhancement. See Cotto v. State, 139 So. 3d 283, 289 (Fla. 2014) ("[A] PRR sentence is not an enhanced sentence" because "[t]he PRR statute does not increase the maximum period of incarceration to which a person may be sentenced.")

of a charge other than when you were in prison. And this was a, in my mind, a serious offense involving a burglary of a dwelling, and I will find that based on the timing of this offense and when you were released from prison, that you qualify as a prison releasee reoffender. In addition, based on at least the two prior convictions that I have in front of me, you do also qualify as a habitual offender.

Having listened to the testimony during the trial, having reviewed the presentence investigation outlining all the factors that needed to be addressed, and listening to the argument here today, I'm going to sentence you as follows: On the burglary of the dwelling, I will sentence you as a habitual felony offender to 20 years Department of Corrections with credit for all time served. I'll also find that you qualify, as I said, as a prison releasee reoffender, and therefore you will be required to serve 15 years as a prison releasee reoffender on that count, a day-for-day sentence and with credit for time served.

Mr. Evans now asserts that "[t]he totality of the circumstances indicate [that] this was a vindictive sentence and [he] was being punished for exercising his right to go to trial." He maintains that although the trial court had to impose the mandatory minimum fifteen-year PRR sentence, "anything beyond that was clearly vindictive," especially where "[t]he trial court failed to point to any specific factors that would cause him to impose a sentence two and a half times greater than the maximum sentence he offered to impose if [Mr. Evans] had accepted the trial court's offer and waived his constitutional right to a jury trial by entering a plea."

## Analysis

"The term *vindictive*–when used in the context of a claim of vindictive sentence–'is a term of art which expresses the legal effect of a given course of action, viewed objectively, and does not imply any personal animosity between the court and the defendant.' " Mendez v. State, 28 So. 3d 948, 950-51 (Fla. 2d DCA 2010) (quoting

- 3 -

Harris v. State, 903 So. 2d 363, 366 (Fla. 2d DCA 2005)). Whether the trial court imposed a vindictive sentence is a legal question that we review de novo. Floyd v. State, 198 So. 3d 718, 721 (Fla. 2d DCA 2016). Imposition of a vindictive sentence is fundamental error that may be raised for the first time on appeal, as is the case here. See Mendez, 28 So. 3d at 950.

We "consider the totality of the circumstances to determine whether a defendant's due process rights were violated by the trial court's imposition of a harsher sentence after unsuccessful plea discussions in which the trial court participated." Floyd, 198 So. 3d at 721; see also Wilson v. State, 845 So. 2d 142,156 (Fla. 2003) ("We conclude that a totality of the circumstances review . . . is the more appropriate analysis to employ to determine whether a defendant's constitutional right to due process of law was violated by the imposition of an increased sentence after unsuccessful plea discussions in which the trial judge participated."). "A presumption of vindictiveness arises where 'there is a "reasonable likelihood" that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority.' " Cambridge v. State, 884 So. 2d 535, 537 (Fla. 2d DCA 2004) (quoting Alabama v. Smith, 490 U.S. 794, 799 (1989)).

We observe that "[i]n Wilson, the [supreme court] declined to adopt a presumption of vindictiveness . . . in all cases in which a judge participates in failed plea negotiations, and then sentences the defendant more severely than the sentence contemplated." Evans v. State, 979 So. 2d 383, 385 (Fla. 5th DCA 2008). Thus, standing alone, the trial court's efforts to facilitate plea negotiations do not compel a conclusion of vindictive sentencing. Rather, the trial court's participation in failed plea

negotiations is but one factor among several that we consider. See Wilson, 845 So. 2d at 156 ("Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a 'reasonable likelihood' that the harsher sentence was imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial." (citing Smith, 490 U.S. at 799)). The Wilson court listed the relevant factors for our consideration:

> (1) [W]hether the trial judge initiated the plea discussions with the defendant in violation of [State v. Warner, 762 So. 2d 507 (Fla. 2000)]; (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.

Wilson, 845 So. 2d at 156 (footnote omitted). We consider each factor, below.

a.      Trial court's initiation of plea discussions

The State made a plea offer before the trial court suggested an open plea. Therefore, in a strict sense, the trial court did not initiate plea negotiations.

Nevertheless, the trial court involved itself in the plea process by proposing an open plea with a cap, a scenario the supreme court has sought to guard against, regardless of whether the trial court initiated plea discussions subsequent to, and with terms different from, those initially proposed by the State. See Warner, 762 So. 2d at 513 ("The trial court must not initiate a plea dialogue; rather, at its discretion, it may (but is not required to) participate in such discussions upon request of a party.");

- 5 -

see also Baxter v. State, 127 So. 3d 726, 733 (Fla. 1st DCA 2013) ("Our supreme court does not prohibit judicial participation in the plea bargaining process; but a judge's involvement must be limited 'to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.' (quoting Warner, 762 So. 2d at 513)). Accordingly, this first factor favors Mr. Evans.

      b.    Trial judge's role as impartial arbiter

The trial court did not abandon its neutrality. Its final effort to broker a deal consisted of the following statement:

> As far as what I'm going to do, I have no idea because I know very little about you. I seem to recall you from years ago that we may have had a case. You may have been in front of me on something. It [m]ay have been a drug case. I don't remember. But I don't remember too much about that and I know very little about you. So if you want some kind of indication from where in that range I would sentence you, I have no idea. If I find sufficient aggravating factors that the State presents, it may be the seven years. If I find mitigating factors that you present that are significant, it may be less, but somewhere within that range. Where it might fall I can't tell you. It all depends on what I hear at the sentencing hearing. So that is the option that I am prepared to throw out if the State is agreeing to that kind of procedure.[2]

Seemingly, and with little information about Mr. Evans, the trial court attempted to save Mr. Evans from himself. The trial court warned him that because the State would seek PRR sentencing, the State was in the driver's seat. See State v. Baker, 874 So. 2d 643, 645 (Fla. 2d DCA 2004) ("Imposing a PRR sentence is

---

[2]The trial court appears to have misspoken in suggesting that Mr. Evans could receive a seven–year sentence based upon a "find[ing] of sufficient aggravating factors." Our review of the record reflects that the trial court's proposal was capped at eight years.

mandatory once the State proves that the defendant qualifies."); Ellington v. State, 96 So. 3d 1131, 1131-32 (Fla. 1st DCA 2011) ("It is well-settled that, once the State proves by a preponderance of the evidence that a defendant qualifies as a prison releasee reoffender, the trial court must sentence the defendant in accordance with the provisions of section 775.082(9), Florida Statutes.").  Thus, if the jury convicted Mr. Evans, the trial court would have to sentence him to at least a mandatory minimum term of fifteen years' imprisonment on the burglary charge.  Moreover, he faced a potential thirty-year sentence as a HFO on that charge.  In the face of these possible sentences, the trial court expressly disclaimed having "[a]n[y] idea" what sentence, up to and including the potential eight years' imprisonment, Mr. Evans would receive if he accepted the trial court's offer.  Rather, the trial court carefully explained that the sentence would be based upon "what I hear at the sentencing hearing."

In Floyd, we concluded that the following circumstances supported a finding of vindictiveness as to the second Wilson factor:

> At the beginning of the pretrial hearing, the trial court properly informed Floyd of the State's offer and discussed the possibility that his sentence could be imposed consecutive to the one in his first case.  However, the court urged Floyd to accept the offer by telling him his exposure was "pretty dramatic" and he might be able to "walk out of jail" if he accepted the offer.  The court indicated that it was unlikely to impose a concurrent sentence if Floyd were convicted following a trial.  Thus, Floyd's sentence would likely turn on whether he went to trial.  The court reiterated that walking out of jail was "an improbable proposition" if sentencing were posttrial.

> The court brought up the matter again at the end of the hearing.  While the court properly informed Floyd of his three options, the court also gave Floyd an ultimatum: he could accept the offer right then or the offer would go "out the door" with Floyd.  The implication arising from the court's

- 7 -

comments was that Floyd's sentence would hinge on accepting the State's offer or going to trial and that a harsher sentence would be imposed if Floyd went to trial and was convicted.

Id. at 722.

Unlike Floyd, the trial court made no express or implicit threats that it would impose a harsher sentence if Mr. Evans went to trial. See Wilson, 845 So. 2d at 156-57 ("When the trial judge becomes an advocate for a plea–either one offered by the judge or by the State–the trial judge runs the risk of departing from its critical role as a neutral arbiter. The trial judge must make clear that the sentence is based on what the judge presently has before him or her, and must caution that there is no guarantee that this same sentence will be imposed if the defendant elects to go to trial."). The trial court acted consistently with the guidance provided in Wilson. To that end, the trial court repeatedly explained to Mr. Evans the sentencing restrictions it faced should he be found guilty at trial. See Floyd, 198 So. 3d at 722 ("As to the second factor, the court may inform the defendant of the State's offer and explain his sentencing exposure."). Unlike the trial court in Floyd, here the trial court maintained its impartiality.

        c.      Disparity in sentences and explanation for the increased sentence

We combine the third and fourth Wilson factors for discussion because the disparity in sentences is justified by the explanation provided by the trial court at the sentencing hearing.

Mr. Evans highlights "[t]he disparity of the plea offer, a sentence between bottom of the guidelines, 35.85 months, and 8 years imprisonment, and the sentence received of 20 years as a habitual offender was anywhere between 6.6 and 2.5 times greater than the [trial court's] offer." However, this is an inappropriate metric. Because

the trial court was hamstrung by the State's decision to seek HFO and PRR sentencing following the jury's guilty verdicts, Mr. Evans, at a minimum, faced fifteen years' imprisonment as a PRR. Thus, we assess the disparity between the fifteen-year minimum sentence he would face for the burglary charge, and the twenty-year HFO sentence he received.

The trial court furnished a sufficient basis to justify its sentence. See Wilson, 845 So. 2d at 148 ("As explained by the Supreme Court in subsequent decisions, [North Carolina v. Pearce, 395 U.S. 711 (1969),] and its progeny established 'a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.' " (quoting United States v. Goodwin, 457 U.S. 368, 374 (1982))); see, e.g., Cambridge, 884 So. 2d at 538 (holding that the presumption of vindictiveness remained unrebutted because the "record contain[ed] no explanation of the grounds for the sentence other than the nature of the crime committed, which generally was known to the court prior to the trial").

Hernandez v. State, 145 So. 3d 902 (Fla. 2d DCA 2014), is helpful. There, the trial court engaged in plea discussions with the defendant. Id. at 904. Apparently, the State had previously offered Mr. Hernandez five years' imprisonment. When the trial court heard of that prior offer, it asked him, "Do you want to–do you want to have the sentencing issue resolved today and accept the five years that the State had previously offered? . . . If you want to accept the State's original offer, I will honor it." Id. at 904-05. Mr. Hernandez declined that offer and entered an open plea with sentencing to follow in thirty days, during which period he could render substantial assistance. Id. at 905. When the sentencing hearing took place, the trial court found

that the defendant did not provide substantial assistance and sentenced him to fourteen years in prison. Id. We concluded that "there is an unrebutted presumption that the harsher sentence imposed was the product of vindictive sentencing." Id. In so holding, we observed that "the trial court clearly initiated plea negotiations at the plea hearing by offering Hernandez the State's original five-year deal if he would agree to being sentenced that day." Id. Critically, we further stated that "Hernandez's fourteen-year sentence is undeniably harsher than the five-year offer, and there is nothing in the record to explain the increase in the sentence." Id. (emphasis added).

Mr. Evans "acknowledges that after trial the judge had to impose a 15 year minimum mandatory sentence as a PRR." However, he claims that "anything above the fifteen-year PRR sentence was clearly vindictive" because the trial court was aware before trial that Mr. Evans "qualified as a HFO and PRR." To Mr. Evans' thinking, the trial court "did not learn anything new about the case or [Mr.] Evans that would have suggested an increased sentence was appropriate."

This is inaccurate. As described earlier, prior to trial, the trial court was quick to point out that it knew little of Mr. Evans' criminal history. Upon reviewing the PSI, however, the trial court learned much that informed its sentencing decision. The trial court noted Mr. Evans' significant criminal history, observing specifically that "there's very little time, very few years in which you were not arrested or convicted of a charge other than when you were in prison." The trial court also found that "this was a, in my mind, a serious offense involving burglary of a dwelling." Thus, unlike Hernandez, the reasons for the sentencing disparity are clear. Indeed, we must agree with the State that the increased sentence "reflects the trial court's apparent belief [Mr.] Evans'

- 10 -

sentence as both a PRR and HFO was necessary for the public's protection based upon [Mr.] Evans' escalating pattern of criminal conduct." Cf. Freeman v. State, 818 So. 2d 580, 584 (Fla. 5th DCA 2002) (holding that defendant's enhanced HFO life sentence, imposed following trial and after defendant rejected State's forty-year plea offer, was not vindictive). This was all information unknown to the trial court when it offered the capped open plea.

## Conclusion

We can confidently conclude that, under the totality of the circumstances, Mr. Evans was not subjected to an impermissible vindictive sentence. See Mitchell v. State, 521 So. 2d 185, 187 (Fla. 4th DCA 1988) ("An accused may not be subjected to more severe punishment for exercising his constitutional right to stand trial."). Thus, we affirm Mr. Evans' judgment and sentences.

Affirmed.


NORTHCUTT and SMITH, JJ., Concur.